**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MABVAX THERAPEUTICS HOLDINGS, INC., *et al.*,[1] | ) ) | Case No. 19- |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) PROHIBITING
UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING
SERVICES; (II) DEEMING UTILITY COMPANIES ASSURED OF FUTURE
PERFORMANCE; AND (III) ESTABLISHING PROCEDURES FOR
DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

MabVax Therapeutics Holdings, Inc. ("MabVax Holdings") and MabVax Therapeutics, Inc. ("MabVax" and together with MabVax Holdings, the "Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned proposed counsel, file this motion (the "Motion") seeking entry of (a) an interim order (the "Interim Order"), in substantially the form attached hereto as **Exhibit B**, and (b) a final order (the "Final Order"), in substantially the form attached hereto as **Exhibit C**, pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"):  (i) prohibiting the Utility Companies (as defined below) from altering, refusing, or discontinuing services; (ii) deeming the Utility Companies adequately assured of future performance; and (iii) establishing procedures for resolving requests for additional assurance of future payment and authorizing the Debtors to provide adequate assurance of future payment to the Utility Companies.  In support of the Motion, the Debtors respectfully states as follows:

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MabVax Therapeutics Holdings, Inc. (7903) and (ii) MabVax Therapeutics, Inc. (1765). The Debtors' mailing address is 11535 Sorrento Valley Road, Suite 400, San Diego, CA 92121.

**JURISDICTION**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code.

**BACKGROUND**

**A.      Introduction**

2.      On this date (the "Petition Date"), the Debtors each filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.

3.      The Debtors have continued in possession of their property and are operating and managing their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No trustee, examiner, or creditors' committee has been appointed in these Chapter 11 Cases.

5.      Debtor MabVax is a wholly owned subsidiary of Debtor MabVax Holdings. Debtor MabVax is non-operating company that holds certain patents and other property that the Debtors are seeking to sell in these Chapter 11 Cases.

6.      Debtor MabVax Holdings is a biotechnology company.  Specifically, a clinical-stage immuno-oncology drug development company with a fully human antibody discovery platform focused on the clinical development of products to address unmet medical needs in the treatment of cancer and pancreatitis.

7.      The Debtors' prepetition capital structure and the events leading up to the commencement of these cases are set forth in *Declaration of J. David Hansen in Support of Debtors Chapter 11 Petitions and First Day Motions* (the "Hansen Declaration") filed concurrently herewith and fully incorporated by reference.

**B.      The Utility Providers**

8.      The two utility services that are essential to the Debtors' ability to sustain their business operations while these Chapter 11 Cases are pending are provided by San Diego Gas and Electric Company and Cox Business LLC (together, the "Utility Companies").  San Diego Gas and Electric provides electricity and gas; Cox Business provides internet and telephone services (together, the "Utility Services").[2]  A list identifying the Utility Companies and their notice addresses is attached hereto as **Exhibit A** (the "Utilities Service List").[3]

9.      Continued and uninterrupted Utility Service is vital to the Debtors' ability to sustain their operations during these Chapter 11 Cases.  Because of the nature of the Debtors' operations, termination or interruption of the Utility Services would dramatically impair the Debtors' ability to conduct business and cause considerable inconvenience to the Debtors'

---

[2] Section 366 of the Bankruptcy Code applies to entities that are traditionally viewed as utilities (such as those that provide electricity, telephone service, water, or gas) and any entity that supplies services that cannot be readily obtained or replaced elsewhere, or which constitute a monopoly with respect to the services that it provides to the debtor. *See*, *e.g.*, *One Stop Realtour Place, Inc. v. Allegiance Telecom, Inc.* (*In re One Stop Realtour Place, Inc.*), 268 B.R. 430 (Bankr. E.D. Pa. 2001) (looking to the ordinary meaning of "utility" as defined by Merriam Webster and finding that a provider of telephone services is a utility regardless of whether telephone service may be available from another provider); *Good Time Charlie's Ltd. v. Black* (*In re Good Time Charlie's Ltd.*), 25 B.R. 226 (Bankr. E.D. Pa. 1982) (finding that a shopping mall was a utility because it was supplying electricity service to the debtor and it would be economically impractical for the debtor to rewire its business to obtain power directly from the power company).

[3] The listing of any entity on **Exhibit A** is not an admission that such entity is a utility within the meaning of section 366.  The Debtors reserve all rights to further address the characterization of any particular entities listed on **Exhibit A** as a utility company subject to section 366(a).  The Debtors further reserve the right to terminate the services of any Utility Company at any time and to seek an immediate refund of any pre-petition utility deposit.  This Motion does not seek assumption or rejection of any executory contract under section 365 of the Bankruptcy Code, and the Debtors reserve the right to claim that any contract with the Utility Companies is or is not an executory contract, as the facts may dictate.  The relief requested herein is with respect to all Utility Companies and is not limited only to those listed on **Exhibit A**.

customers and employees.  If the Utility Companies are permitted to terminate or disrupt service to the Debtors, the Debtors' primary revenue source would be threatened.

### RELIEF REQUESTED

10.     By this Motion, the Debtors respectfully request the entry of the Interim Order and the Final Order pursuant to section 366: (i) prohibiting the Utility Companies from altering, refusing, or discontinuing service on account of outstanding prepetition invoices, (ii) deeming the Utility Companies adequately assured of future performance, and (iii) establishing the Determination Procedures for determining adequate assurance of payment.

11.     Also, the Debtors request that the Court schedule a final hearing on this Motion (the "Final Hearing") at its convenience on a date in advance of the expiration of thirty (30) days following the Petition Date in order to, as discussed below: (a) address any outstanding objection to the Motion and (b) resolve any disputes regarding adequate assurance of payment prior to the expiration of the thirty (30) day period set forth in section 366(c)(2) of the Bankruptcy Code.

**A.     The Proposed Adequate Assurance**

12.     The Debtors fully intend to pay in full all anticipated post-petition obligations owed to the Utility Companies in a timely manner and expect that it will have funds sufficient to pay all post-petition utility obligations.  The source of the post-petition payment will be operating cash but the amounts are also provided for in the Debtors' proposed postpetition financing facility budget.

13.     Pursuant to section 366(a) of the Bankruptcy Code, during the first 20 days following the commencement of a bankruptcy case, a utility may not alter, refuse, or discontinue service to, or discriminate against, a debtor solely on the basis of the commencement of the case or the failure of the debtor to pay a prepetition debt for utility services provided.  11 U.S.C.

§ 366(a).  Following the 20-day period, however, utility companies may alter, refuse, or discontinue service if the debtor does not furnish "adequate assurance of payment" of postpetition utility service obligations.  11 U.S.C. § 366(b).  Furthermore, following the 30-day period after the commencement of a bankruptcy case, utility companies may alter, refuse, or discontinue service if the debtor does not provide adequate assurance of payment of postpetition utility service that is "satisfactory to the utility."  11 U.S.C. § 366(c)(2).[4]

14.    While the acceptable form of adequate assurance of payment is described in subsection 366(c)(1)(A) of the Bankruptcy Code, the determination of the amount of the adequate assurance is within the ultimate discretion of the Court.  It is well settled that the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment.  Instead, the protection granted to a utility service provider is intended to avoid exposing the provider to an unreasonable risk of nonpayment for services provided post-petition. The pre-petition amounts owed to each Utility Company is modest; approximately $3,300 is owed to San Diego Gas and Electric, and Cox Business is owed approximately $2,050.  To provide additional adequate assurance of payment for future services, the Debtors propose to deposit a sum equal to the Debtors' estimated average cost for half a month of Utility Services (the "Adequate Assurance Deposit") into a segregated account (the "Adequate Assurance

---

[4] There is an apparent discrepancy between subsections (b) and (c) of section 366 of the Bankruptcy Code because these two subsections set forth different time periods during which a utility is prohibited from altering, refusing or discontinuing utility service.  Specifically, as noted above, section 366(b) of the Bankruptcy Code allows a utility to alter, refuse or discontinue service "if neither the trustee nor the debtor, within 20 days after the date of the order of relief, furnishes adequate assurance of payment," while section 366(c)(2) of the Bankruptcy Code allows a utility in "a case filed under chapter 11…to alter, refuse or discontinue service to a chapter 11 debtor…if during the 30-day period beginning of the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service…."

Under the statutory construction canon *lex specialis derogate legi generali* ("specific language controls over general"), the language of section 366(c)(2) controls here because the Debtors are chapter 11 debtors.  *See* 3 Collier on Bankruptcy ¶ 366.03121 (Alan N. Resnick & Henry J. Somme reds., 15th ed. Rev. 2006) ("It is unclear how the 30-day period [in section 366(c) of the Bankruptcy Code] is more specifically applicable to chapter 11 cases, the 30-day period, rather than the 20-day period in section 366(b), should apply.").

Account") within ten (10) business days after the entry of the Interim Order.  Because the Debtors' approximate half a month spending on Utility Services is approximately $2,675, the Adequate Assurance Deposit will be $2,675.

15.    The Debtors further propose to maintain the Adequate Assurance Account with a minimum balance equal to the Debtors' estimated average half month cost of Utility Services through the Final Hearing on the Motion.  Thereafter, the Debtors propose to adjust the amount in the Adequate Assurance Account to reflect: (i) the termination of Utility Services by the Debtors regardless of any Additional Assurance Requests (as defined below), and (ii) agreements with the Utility Companies.  These adjustments will permit the Debtors to maintain the Adequate Assurance Account with an amount that consistently provides the Utility Companies that do not otherwise hold deposits or security for their Utility Services with a half month deposit on account of such services.

16.    The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in the ordinary course of business (collectively, the "Proposed Adequate Assurance") constitutes sufficient adequate assurance to the Utility Companies.  If any Utility Company believes additional assurance is required, they may request such assurance pursuant to the below described procedures.

**B.    The Proposed Determination Procedures**

17.    To address the rights of the Utility Companies under § 366(c)(2) and in light of the severe consequences to the Debtors of any interruption in services by the Utility Companies, the Debtors propose the following procedures (the "Determination Procedures") for approval and adoption:

      a.    Absent compliance with the Determination Procedures, a Utility Company may not alter, refuse or discontinue service to or otherwise discriminate

against the Debtors on account of the commencement of these Chapter 11 Cases or any unpaid prepetition charges or request payment of a deposit or receipt of other security.

b.  Within two business days after the entry of the Interim Order on the Motion, the Debtors will serve a copy of the Interim Order to the Utility Companies on the Utility Service List by overnight delivery.  In the event that any Utility Company has been omitted from the Utility Service List, the Debtors shall supplement this list and shall promptly serve a copy of the Interim Order on such Utility Company upon learning of such omission.

c.  If a Utility Company is not satisfied with the Proposed Adequate Assurance provided by the Debtors, the Utility Company must make a request for additional assurance of payment (a "Request") and serve such Request on counsel for the Debtors, The Rosner Law Group LLC, Attn.:  Frederick B. Rosner, Esq., 824 N. Market Street, Suite 810, Wilmington, Delaware 19801, and file such request with the Court.  Any such Request by a Utility Company must specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company and must set forth (i) the type of utility services that are provided and the associated account number, (ii) the location for which the relevant utility services are provided, (iii) a list of any deposits or other security currently held by such Utility Company immediately prior to the Petition Date on account of the Debtors, (iv) a description of any payment delinquency or irregularity by the Debtors for the post-petition period, and (v) the average amount owed by the Debtors for the prior six months.

d.  Without further order of the Court, the Debtors may enter into agreements granting to the Utility Companies that have submitted Requests any assurance of payment that the Debtors, in their sole discretion, determine is reasonable.

e.  If a Utility Company requests assurance of payment that the Debtors believe are unreasonable, and if after good faith negotiations by the parties, the parties are not able to resolve the issue, the Debtors will request a hearing before this Court, to be held at a date and time to be scheduled promptly by the Debtors upon notice to the applicable Utility Company, to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

f.  Pending resolution of a Request at the Determination Hearing and pending entry of a final order thereon finding that the Utility Company is not adequately assured of future payment, such Utility Company shall be prohibited from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

     g.  The Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Company that fails to make a Request.

18.    At any time, the Debtors may terminate service from any of the Utility Companies, such termination being effective immediately upon the Debtors' notice to the Utility Company.  At such time, the Debtors shall no longer be required to make any more payments to such Utility Company for any services provided after such termination, and any excess shall be returned forthwith.

19.    Although the Debtors have made every attempt to identify any and all utility companies, certain utility companies that currently provide utility services for the Debtors may not be listed on the Utility Service List.  Accordingly, the Debtors request that the Court: (a) authorize the Debtors to provide notice and a copy of the Interim Order (which, for purposes of this paragraph, shall be the Final Order on this Motion after entry of such Final Order) to utility companies not listed on the Utility Service List (collectively, the "Additional Utility Companies"), as such Additional Utility Companies are identified, and (b) provide that the Additional Utility Companies are subject to the terms of the Interim Order, including the Determination Procedures.

## BASIS FOR RELIEF

20.    Section 366 of the Bankruptcy Code protects a debtor against the immediate termination of utility services after commencing its case. 11 U.S.C. § 366(a).  Section 366 applies to entities providing electricity, gas, oil, water, trash removal, and/or telephone services, as well as any other entity that supplies services that cannot be readily obtained or replaced elsewhere, or which constitutes a monopoly with respect to the services it provides to a debtor.

21.    Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "2005 Amendments"), it was well established by courts,

commentators, and legislative history that section 366 of the Bankruptcy Code did not require, as a matter of course, that the debtor provide a deposit or other security to its utilities as adequate assurance of payment. Pursuant to changes made effective by the 2005 Amendments, in determining whether an assurance of payment is adequate, the court may not consider (i) the absence of security before the petition date; (ii) the debtor's history of timely payments; or (iii) the availability of an administrative expense priority. 11 U.S.C. § 366(c)(3)(B). While the amended section 366(c) clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting that section, did not divest this Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Company. 11 U.S.C. § 366(c)(3)(A). Specifically, pursuant to section 366(c)(3)(A), "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment." *Id.*; *see In re Beach House Property, LLC*, Case No. 08-11761, 2008 Bankr. LEXIS 1091, at *3–*4 (Bankr. S.D. Fla. Apr. 8, 2008) (quoting 3 Collier on Bankruptcy ¶ 366.03[2] (rev. 15th ed. 2006)). Under section 366(c), there is nothing to prevent a court from deciding, as courts did before the enactment of the 2005 Amendments, that, on the facts of the case before it, the amount required of the debtor to provide adequate assurance of payment to a utility company is nominal, or even zero. *See In re Buffets Holdings, Inc*., Ch. 11 Case No. 08-10141 (MFW) (Bankr. D. Del. Jan. 23, 2008) (approving adequate assurance consisting of an escrow equal to 50% of the estimated costs of monthly utility consumption); *In re Pac-West Telecomm, Inc*., Ch. 11 Case No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) (approving adequate assurance that was a one-time supplemental prepayment to each utility company equal to pro-rated amount of one week's charges).

22.     Historically, chapter 11 debtors were able, under section 366 of the Bankruptcy Code, to put the onus on utility providers to argue that whatever form of adequate assurance proposed by the debtor was insufficient.  The 2005 Amendments arguably shift the burden onto the debtor to provide adequate assurance that the utility providers find satisfactory, and to seek court review if a utility provider does not accept the proposed adequate assurance.  Under this reading of section 366, a Utility Company could, on the 29th day following the Petition Date, announce that the proposed adequate assurance is not acceptable, demand an unreasonably large deposit in the context of the risk from the Debtors, and threaten to terminate utility service the next day unless the Debtors complied with the demand.  While the Debtors do not concede that this is a correct reading of amended section 366, the Debtors nonetheless believe it is prudent to require Utility Companies to raise any objections to the Proposed Adequate Assurance so that such objections may be heard by the Court prior to the running of the 30-day period following the Commencement Date.

23.     Congress has not changed the requirement that the assurance of payment only be "adequate."  Courts construing section 366(b) of the Bankruptcy Code have long recognized that "adequate" assurance of payment does not require an absolute guarantee of the debtor's ability to pay.  *See, e.g., In re Caldor, Inc. – N. Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment.  The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc – N. Y.*, 117 F.3d 646 (2d Cir. 1997); *In re Anchor Glass Container Corp.*, 342 B.R. 872, 875 (Bankr. M.D. Fla. 2005); *In re Astle*, 338 B.R. 855, 860–61 (Bankr. D. Idaho 2006) ("Adequate assurance of payment under subsection (b) does not require an absolute guarantee of payment.

What is required is that the utility will be protected from unreasonable risk of nonpayment." (internal quotation marks omitted)); *In re Adelphia Bus. Solutions, Inc*., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("The requirement is for 'adequate assurance' of payment . . . need not necessarily be provided by deposit . . . .  Whether utilities have adequate assurance of future payment is determined by the individual circumstances of each case.") (citation omitted). Despite the language in section 366(c)(2) of the Bankruptcy Code allowing a utility to take action against a debtor should the debtor fail to provide adequate assurance of payment that is "satisfactory" to the utility, section 366 of the Bankruptcy Code does not require that the assurance provided be "satisfactory" once the Court determines the appropriate amount of adequate assurances.

24.     The protection granted to a utility is intended to avoid exposing the utility to an unreasonable risk of nonpayment.  *Id*.  Whether a utility is subject to an unreasonable risk of nonpayment must be determined from the facts and circumstances of each case.  *See In re Anchor Glass Container Corp*., 342 B.R. at 875; *In re Keydata Corp*., 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981).

25.     The essence of the court's inquiry is an examination of the totality of the circumstances in making an informed judgment as to whether utilities will be subject to an unreasonable risk of nonpayment for post-petition services.  *Adelphia*, 280 B.R. at 82–83; *see also Anchor Glass Container Corp.*, 342 B.R. at 875 ("The type of arrangement that constitutes adequate assurance of future payment is a fact-intensive inquiry, determined under the individual circumstances of the case.").

26.     The Debtors believe that the Proposed Adequate Assurance is reasonable and satisfies the requirements of section 366 of the Bankruptcy Code.

27.     Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a).   The proposed Determination Procedures will ensure that the Utility Services are continued without prejudicing the Utility Companies.

28.     The relief requested herein will ensure that the Debtors' operations will not be disrupted by the suspension or termination of vital Utility Services or the requests by the Utility Companies of unnecessarily large deposits that could danger the Debtors' liquidity.   If a disruption occurs, the impact on the Debtors' business operations and revenues would be extremely harmful to the Debtors and all of their creditors.   Without the requested relief, any interruption in services by the Utility Companies could bring the Debtors' business to a grinding halt.   Even if the Utility Companies did not interrupt their services, without the requested relief the Debtors could be forced to address numerous requests by Utility Companies in a disorganized manner during a critical period in this chapter 11 case and during a time when its efforts should be more productively focused on reorganization and the emergence from bankruptcy.   At the same time, the relief requested provides the Utility Companies with a fair and orderly procedure for determining requests for additional or different adequate assurance.

29.     Based upon the foregoing, the Debtors respectfully submit that the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULE 6004

30.     To implement the relief requested immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under the Bankruptcy Rule 6004(h), if applicable, as the exigent nature of the relief requested herein justifies immediate relief.

## NOTICE

31.     Notice of this Motion will be given via e-mail, facsimile, telephone, and/or hand delivery to: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel to BioNTech AG, as the proposed lender to the Debtors' post-petition financing facility (the "DIP Lender"), (c) counsel to Oxford Finance LLC, the Debtors' pre-petition secured lender, (d) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis and (e) the Utility Companies and their counsel, if known to the Debtors.  The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

32.     No prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court:

(a)     enter an order in the form attached hereto as **Exhibit B**; and

(b)     grant the Debtors such other and further relief as is just and proper.

Respectfully submitted,

Dated: March 21, 2019
    Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
Email:  rosner@teamrosner.com
      leonhardt@teamrosner.com
      gibson@teamrosner.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**EXHIBIT A**

**List of Utility Companies**

| Vendor Name | Address | Pre-Petition Arrearage |
|---|---|---|
| San Diego Gas and Electric Company | SDG&E<br>P.O. Box 25111<br>Santa Ana, CA 92799-5111 | $3,300 |
| Cox Business LLC | 1341 Crossways Blvd,<br>Chesapeake, VA 23320 | $2,050 |

**EXHIBIT B**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MABVAX THERAPEUTICS HOLDINGS, INC., | ) | Case No. 19- |
| *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**INTERIM ORDER (I) PROHIBITING UTILITY COMPANIES FROM ALTERING,
REFUSING, OR DISCONTINUING SERVICES; (II) DEEMING UTILITY COMPANIES
ASSURED OF FUTURE PERFORMANCE; AND (III) ESTABLISHING PROCEDURES
FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

This matter is before the Court on the Debtors' *Motion for Interim and Final Orders (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service on Account of Prepetition Invoices, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Adequate Assurance of Payment* (the "Motion")[2].

The Court has considered the Motion, the Hansen Declaration, and the matters reflected in the record of the hearing held thereon.  It appears that the Court has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the United States Trustee, counsel to the proposed DIP Lender, counsel to Oxford Finance LLC, the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, and the Utility Companies and their counsel, if known; that no further notice is necessary; that the relief sought in the Motion is in the best interests of the Debtors, their estates, and their creditors; and that good and sufficient cause exists for such relief.

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MabVax Therapeutics Holdings, Inc. (7903) and (ii) MabVax Therapeutics, Inc. (1765). The Debtors' mailing address is 11535 Sorrento Valley Road, Suite 400, San Diego, CA 92121.

[2] All capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

Accordingly, it is hereby ORDERED as follows:

1.      The Motion is GRANTED to the extent set forth herein on an interim basis.

2.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

3.      No Utility Company may alter, refuse, terminate, or discontinue services to, and/or discriminate against the Debtors on the basis of commencement of this case or on account of unpaid invoices for service provided by any of the Utility Companies to the Debtors prior to the Petition Date.

4.      Within ten (10) business days after the entry of the Interim Order, the Debtors will deposit a sum equal to the Debtors' estimated average cost for half a month of Utility Services (the "Adequate Assurance Deposit") into a segregated account (the "Adequate Assurance Account").

5.      The Final Hearing upon the Motion shall be held before the undersigned on April ___, 2019 at _____ __.m. (ET), or as soon thereafter as counsel may be heard.  Any Utility Company that objects to the relief sought in the Motion must file a written objection to the Motion and serve a copy of the objection on counsel for the Debtors so that the objection is received at least seven days before the Final Hearing.

6.      The Debtors are directed to pay on a timely basis, in accordance with its pre-petition practices, all undisputed invoices in respect of post-petition utility services rendered by the Utility Companies to the Debtors.

7.      Notwithstanding the terms of paragraph 3 above, the following procedures shall be used by the Court to determine, if necessary, whether the requested assurance of payment by a Utility Company is adequate (the "Determination Procedures"):

a.  Absent compliance with the Determination Procedures, a Utility Company may not alter, refuse or discontinue service to or otherwise discriminate against the Debtors on account of the commencement of these chapter 11 cases or any unpaid prepetition charges or request payment of a deposit or receipt of other security.

b.  Within two business days after the entry of the Interim Order on the Motion, the Debtors will serve a copy of the Interim Order to the Utility Companies on the Utility Service List by overnight delivery.  In the event that any Utility Company has been omitted from the Utility Service List, the Debtors shall supplement this list and shall promptly serve a copy of the Interim Order on such Utility Company upon learning of such omission.

c.  If a Utility Company is not satisfied with the Proposed Adequate Assurance provided by the Debtors, the Utility Company must make a request for additional assurance of payment (a "Request") and serve such Request on counsel for the Debtors, The Rosner Law Group LLC, Attn.:  Frederick B. Rosner, Esq., 824 N. Market Street, Suite 810, Wilmington, Delaware 19801, and file such request with the Court.  Any such Request by a Utility Company must specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company and must set forth (i) the type of utility services that are provided and the associated account number, (ii) the location for which the relevant utility services are provided, (iii) a list of any deposits or other security currently held by such Utility Company immediately prior to the Petition Date on account of the Debtors, (iv) a description of any payment delinquency or irregularity by the Debtors for the post-petition period, and (v) the average amount owed by the Debtors for the prior six months.

d.  Without further order of the Court, the Debtors may enter into agreements granting to the Utility Companies that have submitted Requests any assurance of payment that the Debtor, in its sole discretion, determine is reasonable.

e.  If a Utility Company requests assurance of payment that the Debtors believe is unreasonable, and if after good faith negotiations by the parties, the parties are not able to resolve the issue, the Debtors will request a hearing before this Court, to be held at a date and time to be scheduled promptly by the Debtors upon notice to the applicable Utility Company, to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

f.  Pending resolution of a Request at the Determination Hearing and pending entry of a final order thereon finding that the Utility Company is not adequately assured of future payment, such Utility Company shall be prohibited from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

g.  The Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Company that fails to make a Request.

h.  At any time, the Debtors may terminate service from any of the Utility Companies, such termination being effective immediately upon Debtors' notice to the Utility Company.  At such time, Debtors shall no longer be required to make any more payments to such Utility Company for any services provided after such termination, and any excess shall be returned forthwith.

8.      In addition, the Debtors are authorized, as necessary, to provide notice and a copy of this Interim Order to any Additional Utility Companies as such Additional Utility Companies are identified.  Such Additional Utility Companies shall be subject to the terms of the Interim Order, including the Determination Procedures.

9.      The Debtors' right to dispute whether any of the entities now or hereafter listed in Exhibit A to the Motion are "utilities" within the meaning of section 366(a) of the Bankruptcy Code is reserved.

10.     The Debtors shall serve a copy of the Motion, together with the Final Order, on each Utility Company, the Office of the United States Trustee for the District of Delaware, counsel to the proposed DIP Lender, counsel to Oxford Finance LLC, the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, the Utility Companies, and those parties entitled to notice pursuant to Bankruptcy Rule 2002 within two (2) business days of entry of this Interim Order by the Court.

11.     The deadline by which objections to the Motion and the proposed Final Order must be filed is _____, 2019, at 4:00 p.m. (ET).  All objections shall be served on proposed counsel for the Debtors, The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, Delaware 19801 (Attn.:  Frederick B. Rosner, Esq.); and (ii) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: _____, Esq.

12.     Nothing in this Order or the Motion shall be deemed to constitute the assumption of any agreement pursuant to section 365 of the Bankruptcy Code.

13.     This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation and implementation of this Interim Order.

Dated: March ___, 2019

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MABVAX THERAPEUTICS HOLDINGS, INC., | ) | Case No. 19- |
| *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**FINAL ORDER (I) PROHIBITING UTILITY COMPANIES FROM ALTERING,
REFUSING, OR DISCONTINUING SERVICES; (II) DEEMING UTILITY COMPANIES
ASSURED OF FUTURE PERFORMANCE; AND (III) ESTABLISHING PROCEDURES
FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

This matter is before the Court on the *Motion for Interim and Final Orders (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service on Account of Prepetition Invoices, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Adequate Assurance of Payment* (the "Motion")[2].  On the Petition Date, the Court granted the Motion on an interim basis and scheduled a Final Hearing for this date.

The Court has considered the Motion, the Hansen Declaration, and the matters reflected in the record of the hearings held on the Motion on the Petition Date and this date.  It appears that the Court has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the United States Trustee, counsel to the DIP Lender, counsel to Oxford Finance LLC, the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, and the Utility Companies and their counsel, if known to the Debtors; that no

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MabVax Therapeutics Holdings, Inc. (7903) and (ii) MabVax Therapeutics, Inc. (1765). The Debtors' mailing address is 11535 Sorrento Valley Road, Suite 400, San Diego, CA 92121.

[2] All capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

{00025162.3 }

further notice is necessary; that the relief sought in the Motion is in the best interests of the Debtors, their estates, and their creditors; and that good and sufficient cause exists for such relief.

ORDERED, ADJUDGED, and DECREED that:

1.      The Motion is GRANTED on a final basis.

2.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

3.      The Debtors are authorized, but not directed, to pay on a timely basis in accordance with its prepetition practices all undisputed invoices in respect of postpetition services rendered by the Utility Companies to the Debtors.

4.      No Utility Company may alter, refuse, terminate, or discontinue services to, and/or discriminate against the Debtors on the basis of commencement of this case or on account of unpaid invoices for service provided by any of the Utility Companies to the Debtors prior to the Petition Date.

5.      Notwithstanding, the terms of paragraph 4 above, the following procedures shall be used by the Court to determine, if necessary, whether the requested assurance of payment by a Utility Company is adequate (the "Determination Procedures"):

    a.  Absent compliance with the Determination Procedures, a Utility Company may not alter, refuse or discontinue service to or otherwise discriminate against the Debtors on account of the commencement of these chapter 11 cases or any unpaid prepetition charges or request payment of a deposit or receipt of other security.

    b.  If a Utility Company is not satisfied with the Proposed Adequate Assurance provided by the Debtors, the Utility Company must make a request for additional assurance of payment (a "Request") and serve such Request on counsel for the Debtors, at The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801 (Attention: Frederick B. Rosner, Esq.) and file such request with the Court.  Any such Request by a Utility Company must specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company and must set forth (i) the type of

utility services that are provided and the associated account number, (ii) the location for which the relevant utility services are provided, (iii) a list of any deposits or other security currently held by such Utility Company immediately prior to the Petition Date on account of the Debtors, (iv) a description of any payment delinquency or irregularity by the Debtors for the post-petition period, and (v) the average amount owed by the Debtors for the prior six months.

c.   Without further order of the Court, the Debtors may enter into agreements granting to the Utility Companies that have submitted Requests any assurance of payment that the Debtors, in their sole discretion, determine is reasonable.

d.   If a Utility Company requests assurance of payment that the Debtors believe is unreasonable, and if after good faith negotiations by the parties, the parties are not able to resolve the issue, the Debtors will request a hearing before this Court, to be held at a date and time to be scheduled promptly by the Debtor upon notice to the applicable Utility Company, to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

e.   Pending resolution of a Request at the Determination Hearing and pending entry of a final order thereon finding that the Utility Company is not adequately assured of future payment, such Utility Company shall be prohibited from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

f.   The Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Company that fails to make a Request.

g.   At any time, the Debtors may terminate service from any of the Utility Companies, such termination being effective immediately upon Debtors' notice to the Utility Company.  At such time, Debtors shall no longer be required to make any more payments to such Utility Company for any services provided after such termination, and any excess shall be returned forthwith.

6.      In addition, the Debtors are authorized, as necessary, to provide notice and a copy of the Final Order to any Additional Utility Companies as such Additional Utility Companies are identified.  Such Additional Utility Companies shall be subject to the terms of the Final Order, including the Determination Procedures.

7.      The Debtors' right to dispute whether any of the entities now or hereafter listed in **Exhibit A** to the Motion are "utilities" within the meaning of section 366(a) of the Bankruptcy Code is reserved.

8.      Nothing in the Motion or this Order shall be deemed or construed as an admission as to the validity or priority of any claim against the Debtors; an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or a waiver of the right of the Debtors; or shall impair the ability of the Debtors or any other party in interest, to the extent applicable, to contest the validity and amount of any payment made pursuant to this Order.

9.      This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation and implementation of this Interim Order.

Dated: _____, 2019

_____
UNITED STATES BANKRUPTCY JUDGE