**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MABVAX THERAPEUTICS HOLDINGS, INC., | ) Case No. 19- |
| *et al.*,[1] | ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE
DEBTORS TO CONTINUE AND RENEW THEIR GENERAL BUSINESS INSURANCE
POLICIES AND HONOR ALL OBLIGATIONS AND FINANCING AGREEMENTS IN
RESPECT THEREOF**

The above-captioned debtors and debtors in possession (together, the "Debtors"), by and

through their proposed undersigned counsel, hereby file this motion (the "Motion") for entry of an

Order authorizing the Debtors to continue and renew their Insurance Policies and to honor all

Insurance Obligations (defined below) and Financing Agreements (defined below) in connection

with the Insurance Policies.  In support thereof, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and

1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief

requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MabVax
Therapeutics Holdings, Inc. (7903) and (ii) MabVax Therapeutics, Inc. (1765). The Debtors' mailing address is 11535
Sorrento Valley Road, Suite 400, San Diego, CA 92121.

order by the Court in connection with this Motion, to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

2.      Concurrently herewith (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing these Chapter 11 Cases (the "Chapter 11 Cases").

3.      The Debtors continue to manage their properties and affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### The Debtors' Business

4.      Debtor MabVax is a wholly owned subsidiary of Debtor MabVax Holdings.  Debtor MabVax is non-operating company that holds certain patents and other property that the Debtors are seeking to sell in these Chapter 11 Cases.

5.      Debtor MabVax Holdings is a biotechnology company.  Specifically, a clinical-stage immuno-oncology drug development company with a fully human antibody discovery platform focused on the clinical development of products to address unmet medical needs in the treatment of cancer and pancreatitis.

6.      The Debtors' prepetition capital structure and the events leading up to the commencement of this case are set forth in *Declaration of J. David Hansen in Support of Debtors Chapter 11 Petitions and First Day Motions* (the "Hansen Declaration") filed concurrently herewith and fully incorporated by reference.

### The Insurance Policies and the Financing Agreements

6.      In the ordinary course of their business, the Debtors maintain the following types of insurance:  (a) Auto; (b) Cargo; (c) Directors & Officers, (d) Crime, (e) Fiduciary Liability; (f)

2

Employment Practices Liability; (g) Products Liability, (h) Umbrella, (i) Cyber, (i) Workers' Compensation and (j) Property Package (collectively, the "Insurance Policies").

7.       The Insurance Policies are essential to the preservation of the Debtors' business and assets, and in many cases coverage is required by various laws and contracts that govern the Debtors' business conduct.  The Debtors finance their Property Package, Auto, Umbrella, Products Liability, Workers' Compensation, Cargo and Cyber Liability insurance premiums pursuant to a Commercial Premium Finance Agreement with First Insurance Funding Group ("First Insurance").  A copy of the First Insurance premium financing agreement is attached hereto as **Exhibit A** (the "First Financing Agreement").  The First Financing Agreement requires that the Debtors make nine (9) monthly installment payments to First Insurance, in advance, in the amount of $4,025.45.  The Debtors are current through March 1, 2019.  The Debtors anticipate receiving the next invoice on March 29, 2019, and making a regular payment in the amount of $4,025.45 and receiving the last invoice on April 29, 2019, and making a regular payment in the amount of $4,025.45.

8.       The Debtors finance their Employment Practices Liability, Fiduciary Liability and Crime insurance premiums pursuant to a separate Commercial Premium Finance Agreement with First Insurance.  A copy of the First Insurance premium financing agreement is attached hereto as **Exhibit B** (the "Second Financing Agreement" and together with the First Financing Agreement, the "Financing Agreements").  The Second Financing Agreement requires that the Debtors make nine (9) monthly installment payments to First Insurance, in advance, in the amount of $1,301. The Debtors are current through March 8, 2019.  The Debtors anticipate receiving the invoice for the last installment payment on April 8, 2019, and making a regularly payment in the amount of $1,301.00.

{00025206.2 }

9.      All the Debtors remaining policies are paid at inception and will renew in July or August of 2019.

10.      As directed by the Office of the United States Trustee for the District of Delaware, debtors in chapter 11 cases have a fiduciary obligation and a legal duty to account for their operations of a business, which in part is met substantially by obtaining and maintaining insurance following the Petition Date.  *See Operating Guidelines and Financial Reporting Requirements Required in All Cases Under Chapter 11, Office of the United States Trustee for the District of Delaware.*

11.      The Debtors also believe that any delay in the timely payment of workers' compensation benefits would have a negative effect on the morale of the Debtors' employees at a time when the support of such employees is most critical.  Without the support and confidence of its workforce, the Debtors' operations would be severely impaired.  On the other hand, continuation of the Insurance Policies will facilitate the Debtors' reorganization efforts by helping to foster a sense of "business as usual."

## RELIEF REQUESTED

12.      The Debtors seek the entry of an order authorizing them to maintain, continue and renew the Insurance Policies and to honor all of its obligations under and in connection with the Insurance Policies and the Financing Agreements on an uninterrupted basis and in accordance with the same practices and procedures as were in effect before the Petition Date.  This would include (a) continuing make payments under the Financing Agreements, (b) renewing or obtaining new insurance policies as needed in the ordinary course of business and (c) paying all prepetition amounts arising under the Insurance Policies and Financings Agreement in an amount not to exceed $9,164.83 (in the aggregate, the, "Insurance Obligations").  In addition, the Debtors request that Pacific Premier Bank and any other applicable bank ("Premier Bank") be authorized and

4

directed to receive, process, honor and pay checks drawn on the Debtors' accounts to honor the Insurance Obligations, if any, without regard to whether such checks were presented prior to or after the Petition Date, unless otherwise directed by the Debtors.

**BASIS FOR RELIEF**

A.     The Relief Requested Herein will Benefit all Creditors.

13.     Bankruptcy Code section 105(a) empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. The purpose of Bankruptcy Code section 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 COLLIER ON BANKRUPTCY, ¶ 105.01 (15th rev. ed. 1997); *see also Management Technology Corp. v. Pardo*, 56 B.R. 337, 339 (Bankr. D. N.J. 1985) (court's equitable power derived from Bankruptcy Code section 105).

14.     Under the "necessity of payment rule" or the "doctrine of necessity,"[2] courts often allow the immediate payment of prepetition claims where the payments are essential to the debtor's continued operations, even though the Bankruptcy Code may not explicitly authorize payment. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (Bankr. D. Del. 1999); *In re Columbia Gas System, Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that a debtor may pay a class of prepetition creditors in advance of a confirmed plan if essential to the continued operation of the business).

15.     The doctrine of necessity recognizes that paying prepetition obligations outside of a plan of reorganization is often necessary to realize the paramount purpose of a chapter 11

---

[2] This doctrine, first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C&S W. R. Co.*, 106 U.S. 286, 311-312 (1882), recognizes the existence of judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor.

{00025206.2 }

reorganization – i.e., preventing the liquidation of the debtor-in-possession and preserving its potential for rehabilitation. *See, e.g.*, *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that the doctrine of necessity permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid").

16.     Courts have recognized that the invocation of the "necessity of payment rule" is particularly appropriate to allow a debtor to pay prepetition obligations relating to insurance.  In fact, similar relief has been granted in other complex chapter 11 cases in this District and elsewhere. *See, e.g.*, *In re Nova Holding Clinton County, LLC*, Case No. 09-11081 (KG) (Bankr. D. Del. Apr. 1, 2009).

17.     Courts have recognized that the invocation of the "necessity of payment rule" is particularly appropriate to allow a debtor to pay prepetition obligations relating to workers' compensation insurance programs.  In fact, similar relief has been granted in other complex chapter 11 cases in this District and elsewhere. *See, e.g.*, *In re AbitibiBowater Inc.*, Case No. 09-11296 (KJC) (Bankr. D. Del. Apr. 17, 2009).

18.     Any prepetition amounts that the Debtors may pay in respect of the Insurance Obligations are relatively small in light of the benefits to be derived therefrom.  Therefore, the Debtors submit that the continuation of the Insurance Policies and the Financing Agreements and the payment of all prepetition and post-petition Insurance Obligations arising thereunder are essential to preserve the Debtors' assets and protect against unknowable losses.

19.     It is essential that the relief requested herein be granted expeditiously considering the necessity of keeping appropriate insurance coverage in place and the potential adverse consequences to the Debtors.

{00025206.2 }

20.     As set forth in detail above, the Debtors also believe that continuing the Insurance Policies and being able to honor their Workers' Compensation Policy obligations under that program in a timely manner is critical to the ongoing operation of the their business.   To summarize, if the Debtors cannot continue this program and ensure that any Insurance Obligations in respect of this program will be paid in the ordinary course of business, the Debtors could face severe consequences for failure to comply with applicable state laws.   In addition, the Debtors would risk a loss of value in its business operations, including, among other things, potentially significant litigation exposure and increased costs for alternative arrangements for Workers' Compensation coverage.

B.      There are Sound Business Reasons for the Relief Requested Herein.

21.     Bankruptcy Code section 363(b) provides this Court with additional authority to grant the relief requested herein.   Under this section, the Debtors may use property of their estate outside of the ordinary course of business if it is within its sound business judgment.   *See Ionosphere*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).   In fact, some courts have employed this section to allow a debtor to pay a prepetition claim as an outside of the ordinary course transaction. *See, e.g.*, *In re Conseco, Inc.*, Case No. 02-49672 (CAD) (Bankr. N.D. Ill. Jan. 14, 2003); *In re UAL Corp.*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002).   The Debtors submit that, for the reasons discussed herein, it would be sound and prudent exercise of their business judgment to honor the Insurance Obligations.[3]

---

[3] Furthermore, section 363(c)(1) expressly grants the Debtors the authority to enter into transactions in the ordinary course of business and use property of the estate in the ordinary course of business without notice or a hearing. Therefore, the Debtors believe they are permitted to pay all post-petition amounts due pursuant to the Insurance Obligations and to renew or obtain new insurance policies as such actions are in the ordinary course of the Debtors' business.

{00025206.2 }

C.      Failure to Authorize Payment in the First 20 Days Would Cause Immediate and
        Irreparable Harm

22.     Bankruptcy Rule 6003(b) allows the use of property of the estate, or the payment of prepetition claims, within twenty (20) days of the Petition Date if the relief would prevent "immediate and irreparable harm." Accordingly, for the reasons set forth above and in the Hansen Declaration, the Debtors submit that the relief requested herein is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

## WAIVER OF RULE 6004 STAY

23.     Because the relief requested herein is essential to prevent irreparable harm to the Debtors' business operations and reorganization effort, the Debtors submit that cause exists for a waiver of the 10-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## NOTICE

24.     Notice of this Motion will be given via e-mail, facsimile, telephone, and/or hand delivery to: (i) the Office of the United States Trustee for Region 3, serving the District of Delaware, attn.: Linda Richenderfer; (ii) counsel to Oxford Finance, LLC, the Debtors' pre-petition secured lender, (iii) counsel to BioNTech AG, as the proposed lender to the Debtors' post-petition financing facility, (iv) the creditors holding the 20 largest unsecured claims against the Debtors on a consolidated basis, and (v) Pacific Premier Bank. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Rule 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is needed or required.

8

{00025206.2 }

## NO PRIOR RELIEF

25.     No previous motion for the relief sought herein has been made to this or any other

Court.

## CONCLUSION

**WHEREFORE**, the Debtors request that the Court enter an order, substantially in the form

attached hereto as **Exhibit C** granting the Debtors the relief requested herein and such other and

further relief as may be just and proper.


Dated:   March 21, 2019
         Wilmington, Delaware                    **THE ROSNER LAW GROUP LLC**

                                                 By: */s/ Frederick B. Rosner*
                                                 Frederick B. Rosner (DE 3995)
                                                 Scott J. Leonhardt (DE 4885)
                                                 Jason A. Gibson (DE 6091)
                                                 824 N. Market St., Suite 810
                                                 Wilmington, Delaware 19801
                                                 Telephone:  (302) 777-1111
                                                 Email:  rosner@teamrosner.com
                                                      leonhardt@teamrosner.com
                                                      gibson@teamrosner.com

                                                 *Proposed Counsel for the Debtors*
                                                 *and Debtors in Possession*

# **EXHIBIT A**

**First Financing Agreement**

LENDER:

**COMMERCIAL**
**PREMIUM FINANCE AGREEMENT**

450 Skokie Blvd, Ste 1000

Northbrook, IL 60062-7917
P:(800) 837-2511 F:(800) 837-3709
www.firstinsurancefunding.com

**FIRST INSURANCE®**
— FUNDING —
A WINTRUST COMPANY

**Quote #: 14960587**

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy) | | (Name and Business Address) |
| Mabvax Therapeutics Holdings, Inc. | | MARSH & MCLENNAN AGENCY, LLC-SAN DIEGO |
| 11535 Sorrento Valley Rd Ste 400 | | 9171 TOWNE CENTRE DRIVE |
| San Diego, CA 92121 | | SUITE 500 |
| | | SAN DIEGO, CA 92122 |

## LOAN DISCLOSURE

| Total Premiums, Taxes and Fees | Cash Down Payment | Unpaid Premium Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 39,335.80 | 4,220.68 | 35,115.12 | 0.00 | 35,115.12 | 1,113.93 | 36,229.05 | 7.550 % |

**YOUR PAYMENT SCHEDULE WILL BE:**    *Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000*

| Number of Payments | Amount of Each Payment | First Installment Due | 08/29/2018 |
|---|---|---|---|
| 9 | 4,025.45 | Installment Due Dates | 29th (Monthly) |

**SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a security interest in the financed policies and any additional premiums required under the financed policies, including (but only to the extent permitted by applicable law) all return premiums, dividend payments, and loss payments which reduce unearned premium, subject to any mortgagee or loss payee interest. If any circumstances exist in which premiums related to any financed policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

**FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the policies listed in the Schedule of Policies. The finance charge may include a nonrefundable service charge equal to the maximum amount permitted by law. The finance charge is computed using a 365-day calendar year.

**LATE PAYMENT.** A late charge will be assessed on any installment at least 5 days in default (7 days in VA; 10 days in MA & TX; or later date as required by law.). This late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less (greater of $10 or 5% in FL; greater of $25 or 1.5% in NJ; $5 maximum in DE, MT and ND; $100 maximum in MD; 5% in VA).

**PREPAYMENT.** Insured is entitled to a refund of the unearned finance charge if the loan is prepaid in full. The refund shall be computed according to applicable law.

### SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| 35898288 | C00042-FEDERAL INSURANCE COMPANY G00904-CHUBB & SON [CX:0]  [AU, PR] | PKG | 12 | 07/29/2018 ERN TXS/FEES FIN TXS/FEES | 5,618.00 0.00 0.00 |
| 73563010 | C00042-FEDERAL INSURANCE COMPANY G00904-CHUBB & SON [CX:0]  [PR] | AUTO | 12 | 07/29/2018 ERN TXS/FEES FIN TXS/FEES | 844.00 0.00 0.00 |
| **(Policies continued on next page.)** | | | | TOTAL | 39,335.80 |

Q# 14960587, PRN: 080718, CFG: A03611, RT: A03611-IMM, DD: 0, BM: Invoice. Qtd For: A03611 Original, Memo 0

**INSURED'S AGREEMENT:**

1. In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies, their representative or the Agent or Broker listed above, Insured promises to pay, to the order of LENDER, the Total of Payments subject to all of the provisions of this Agreement.

2. **POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (i) cancel the financed policies in accordance with the provisions contained herein. (ii) receive all sums assigned to LENDER, and (iii) execute and deliver on behalf of Insured all documents relating to the insurance policies listed on the Schedule of Policies ("Financed Policies") in furtherance of this Agreement (clauses (ii) and (iii) are not applicable in Florida). This right to cancel will terminate only after Insured's indebtedness under this Agreement is paid in full.

3. **SIGNATURE & ACKNOWLEDGEMENT.** Insured has signed and received a copy of this Agreement. If Insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of Insured. All named Insured(s), jointly and severally if more than one, agree to all provisions set forth in this Agreement. **Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.**

**NOTICE TO INSURED: (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to receive a partial refund of the finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.**

4. **EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER.

CEO 8/8/18
Gregory P Hanson    CFO 8/8/18

_____    _____    _____    _____
Signature of Insured or Authorized Agent    Date    Signature of Agent    Date

FEIN or SSN    XX-XXX1765

**The undersigned hereby warrants and agrees to the Agent or Broker Representations and Warranties set forth herein.**

FIF0617P



# Payment Voucher

| | |
|---|---|
| **Date** | 3/11/2019 |
| **Check #** | Ref# 27172055 |

Finance Department
11535 Sorrento Valley Road
Suite 400
San Diego CA 92121

**Paid To**

First Insurance Funding Corp.
P.O Box 7000
Carol Stream IL 60197-7000

| Date | Description | Orig. Amount | Amount Due | Discount | Applied Amount |
|---|---|---|---|---|---|
| 2/28/2019 | Bill #9007310857-FEB19 | 4,025.45 | 4,025.45 | | 4,025.45 |
| 3/11/2019 | Bill #9007310857-FEES-0319 | 417.54 | 417.54 | | 417.54 |

**Amount**   $4,442.99

Insured: Mabvax Therapeutics Holdii
Quote #: 14960587

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

**5. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) a payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement; provided, however, when required by law, Insured may be deemed in default only under clause (a) above. Clauses (b) and (c) are not applicable in FL, MD, NV, NC or VA. At any time after default, LENDER can demand and has the right to receive immediate payment of the total unpaid amount due under this Agreement even if LENDER has not received any refund of unearned premium. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in cancellation of the Financed Policies, Insured agrees to pay a cancellation charge where allowed by law (not permitted in AK, FL, KS, KY, NV, NY, NC, PA, SC, TX or VA). If cancellation or default occurs, Insured agrees to pay LENDER interest on the balance due at the contract rate or at the maximum lawful rate, whichever is less, until the balance is paid in full or until such other date as provided by law.

**6. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER, except in KY.**

**7. RETURNED CHECK CHARGE.** If Insured's check is dishonored for any reason and if permitted by law, Insured will pay LENDER a returned check charge equal to the maximum fee permitted by law ($0 in KY; $15 in FL & NV; $20 in VA; maximum of $25 in MD).

**8. REINSTATEMENT.** Once a Notice of Cancellation has been sent to any insurance company, LENDER has no duty to ask that the Financed Policy be reinstated, even if LENDER later receives a payment from Insured. If LENDER requests reinstatement, such request does not guarantee coverage will be reinstated by the insurance company. Payments that LENDER receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of LENDER's rights under this Agreement.

**9. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER (in VA, only to this Agreement). Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation will be credited to the balance due with any excess paid to Insured; the minimum refund is the greater of $1.00 or the minimum amount allowed by law (no minimum in VA). Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the financed policies.

**10. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

**11. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the policies or through whom the policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. The Agent or Broker may receive from LENDER $263.36 for aiding in the administration of this Agreement relating to the Financed Policies , and in NY the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

**12. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**13. GOVERNING LAW.** This Agreement is governed by and interpreted under the laws of the state where Insured resides, except for conflict of laws principles thereof. If any court finds any part of this Agreement to be invalid, such finding shall not affect the remaining provisions of this Agreement.

**14. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of its knowledge (i) the Financed Policies are in full force and effect and that Insured has not and will not assign any interest in the policies except for the interest of mortgagees and loss payees. (ii) that none of the Financed Policies are for personal, family or household purposes, (iii) the Cash Down Payment and any past due payments have been paid in full to the Agent or Broker in cash or other immediately available funds, (iv) all information provided herein or in connection with this Agreement is true, correct, complete and not misleading, (v) Insured is not insolvent nor presently involved in any insolvency proceeding, (vi) Insured has no indebtedness to the insurers issuing the Financed Policies, and (vii) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of such policies.

**15. ADDITIONAL PREMIUMS.** Insured agrees to fully and timely comply with all audits and pay to the insurance company any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. Insured, or Agent/Broker, may request that LENDER finance additional policies and/or additional premium during the term of this Agreement, and if LENDER agrees, this Agreement shall be deemed amended accordingly. Should LENDER assign an account number to further extensions of credit, then a) this Agreement and loan documents identified by the assigned account number(s) shall be deemed to comprise a single and indivisible loan transaction, b) Insured shall irrevocably appoint LENDER as its attorney in fact in connection with additional amount financed, c) default under any component of the transaction shall constitute a default under the entire transaction, and d) unearned premium relating to any component of the transaction may be collected and applied to the entire loan transaction balance.

**16. CORRECTIONS.** LENDER may insert the names of the insurance companies and policy numbers, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement (not applicable in KY or VA).

**17. NON-WAIVER.** Not Applicable.

**18. THIRD PARTY FEE.** Not Applicable.

---

Federal law requires all financial institutions to obtain, verify and record information that identifies each person or entity that is granted a loan. LENDER will require such information as LENDER deems reasonably necessary for proper identification, such as your name, street address, FEIN, SSN or date of birth. LENDER will use this information only to process this Agreement and will not share this information with outside parties except to the extent necessary to complete this transaction.

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, Insured's signature is genuine, and the cash down payment has been received from Insured, (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the policies listed in the Schedule of Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

California Borrowers: **FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS, STATE OF CALIFORNIA**

FIF0617P

## SCHEDULE OF POLICIES

Insured:  Mabvax Therapeutics Holdin
Quote #: 14960587

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| 79863930 | C00042-FEDERAL INSURANCE COMPANY<br>G00904-CHUBB & SON<br>  [CX:0]  [PR] | UMB | 12 | 07/29/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 3,025.00<br>0.00<br>0.00 |
| 36025042 | C00042-FEDERAL INSURANCE COMPANY<br>G00904-CHUBB & SON<br>  [CX:0]  [AU, PR] | PROD | 12 | 07/29/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 17,325.00<br>0.00<br>0.00 |
| BBWWK100005340<br>0 | C00134-NOVA CASUALTY COMPANY<br>G01329-B&B PROGRAMS<br>  [CX:0]  [AU, PR] | WC | 12 | 07/29/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 5,478.00<br>219.00<br>0.00 |
| M20567 | C00005-LLOYDS OF LONDON<br>G02620-FALVEY CARGO  UNDERWRITING<br>  [CX:0]  [AU, PR] | CRGO | 12 | 07/29/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 4,479.00<br>0.00<br>0.00 |
| MPL233144018 | C00005-LLOYDS OF LONDON<br>G00162-CRC INSURANCE SERVICES<br>  [CX:0]  [PR] | CY LIAB | 12 | 07/29/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 2,175.00<br>100.00<br>72.80 |

## __EXHIBIT B__

**Second Financing Agreement**

Revised

450 Skokie Blvd, Ste 1000

## COMMERCIAL
## PREMIUM FINANCE AGREEMENT

Northbrook, IL 60062-7917
P:(800) 837-2511 F:(800) 837-3709

**FIRST INSURANCE**
FUNDING
A WINTRUST COMPANY

www.firstinsurancefunding.com

Quote #: 14692776

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy)<br>MabVax Therapeutics Holdings<br>11535 Sorrento Valley Rd #400<br>San Diego, CA 92121 | | (Name and Business Address)<br>MARSH & MCLENNAN AGENCY, LLC-SAN DIEGO<br>9171 TOWNE CENTRE DRIVE<br>SUITE 500<br>SAN DIEGO, CA 92122 |

## LOAN DISCLOSURE

| Total Premiums, Taxes and Fees | Cash Down Payment | Unpaid Premium Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 14,249.00 | 2,921.80 | 11,327.20 | 0.00 | 11,327.20 | 383.33 | 11,710.53 | 8.050 % |

**YOUR PAYMENT SCHEDULE WILL BE:**    *Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000*

| Number of Payments | Amount of Each Payment | First Installment Due | 08/08/2018 |
|---|---|---|---|
| 9 | 1,301.17 | Installment Due Dates | 8th (Monthly) |

SECURITY INTEREST. INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a security interest in the financed policies and any additional premiums required under the financed policies, including (but only to the extent permitted by applicable law) all return premiums, dividend payments, and loss payments which reduce unearned premium, subject to any mortgagee or loss payee interest. If any circumstances exist in which premiums related to any financed policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.
FINANCE CHARGE. The finance charge begins accruing on the earliest effective date of the policies listed in the Schedule of Policies. The finance charge may include a nonrefundable service charge equal to the maximum amount permitted by law. The finance charge is computed using a 365-day calendar year.
LATE PAYMENT. A late charge will be assessed on any installment at least 5 days in default (7 days in VA; 10 days in MA & TX; or later date as required by law.). This late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less (greater of $10 or 5% in FL; greater of $25 or 1.5% in NJ; $5 maximum in DE, MT and ND; $100 maximum in MD; 5% in VA).
PREPAYMENT. Insured is entitled to a refund of the unearned finance charge if the loan is prepaid in full. The refund shall be computed according to applicable law.

### SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| 82416447 | C00042-FEDERAL INSURANCE COMPANY<br>G00904-CHUBB & SON<br>[CX:0]  [PR] | EPLI | 12 | 07/08/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 10,155.00<br>0.00<br>0.00 |
| 82416290 | C00042-FEDERAL INSURANCE COMPANY<br>G00904-CHUBB & SON<br>[CX:0]  [PR] | LIAB FIDUC | 12 | 07/08/2018<br>ERN TXS/FEES<br>FIN TXS/FEES | 1,608.00<br>0.00<br>0.00 |
| (Policies continued on next page.) | | | | TOTAL | 14,249.00 |

Q# 14692776, PRN: 071618, CFG: A03611, RT: A03611-IMM, DD: 0, BM: Invoice, Qtd For: A03611 Original, Memo 0

INSURED'S AGREEMENT:
1. In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies, their representative or the Agent or Broker listed above, Insured promises to pay, to the order of LENDER, the Total of Payments subject to all of the provisions of this Agreement.
2. POWER OF ATTORNEY. INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (i) cancel the financed policies in accordance with the provisions contained herein, (ii) receive all sums assigned to LENDER, and (iii) execute and deliver on behalf of Insured all documents relating to the insurance policies listed on the Schedule of Policies ("Financed Policies") in furtherance of this Agreement (clauses (ii) and (iii) are not applicable in Florida). This right to cancel will terminate only after Insured's indebtedness under this Agreement is paid in full.
3. SIGNATURE & ACKNOWLEDGEMENT. Insured has signed and received a copy of this Agreement. If Insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of Insured. All named Insured(s), jointly and severally if more than one, agree to all provisions set forth in this Agreement. Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.
NOTICE TO INSURED: (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to receive a partial refund of the finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.
4. EFFECTIVE DATE. This Agreement will not become effective until it is accepted in writing by LENDER.

| | | |
|---|---|---|
| Signature of Insured or Authorized Agent | 7/31/18<br>Date | Signature of Agent                                   Date |
| EIN or SSN   XX-XXX1765 | | The undersigned hereby warrants and agrees to the Agent or Broker Representations and Warranties set forth herein. |

FIF0617P

**EXHIBIT C**

**Proposed Form of Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MABVAX THERAPEUTICS HOLDINGS, INC., *et al.*,[1] | ) | Case No. 19- |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE AND
RENEW THEIR INSURANCE POLICIES AND FINANCING AGREEMENTS AND (II)
HONOR ALL OBLIGATIONS IN RESPECT THEREOF**

Upon consideration of the motion (the "Motion")[2] of the Debtors for the entry of an Order authorizing them to (i) continue and renew their Insurance Policies and Financing Agreements and (ii) to honor all obligations in respect thereof; and jurisdiction existing for the Court to consider the motion; and after due deliberation thereon; and the Court having found that good and sufficient cause exists for granting the Motion and the Court having found that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and upon consideration of the *Declaration of J. David Hansen in Support of Debtors' Chapter 11 Petition and First Day Motions*, and the files and records in this case; and upon the arguments and statements in support of the Motion presented at the hearing before the Court; and it appearing that the requirements of Bankruptcy Rule 6003 have been satisfied; and it appearing that the relief requested is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MabVax Therapeutics Holdings, Inc. (7903) and (ii) MabVax Therapeutics, Inc. (1765). The Debtors' mailing address is 11535 Sorrento Valley Road, Suite 400, San Diego, CA 92121.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

that notice of the Motion was adequate and proper under the circumstances of this case and that no further or other notice need be given; it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized, without interruption and in accordance with the same practices and procedures as were in effect before the Petition Date, (i) to maintain and honor all their obligations under or in connection with the Insurance Policies and (ii) to continue to make payments under the Financing Agreements, and it is further

ORDERED that the Debtors are authorized, in their sole discretion, to satisfy their pre-petition Insurance Obligations (including any commissions), in an amount not to exceed $9,164.83 in the aggregate; and it is further

ORDERED that the Debtors are authorized to renew or to obtain new insurance policies or to execute other agreements in connection with the Insurance Policies and the Financing Agreements; and it is further

ORDERED that Pacific Premier Bank and any other bank maintaining an account upon which a check, draft or wire transfer dated before, on or after the Petition Date, is authorized to (i) honor any such checks or drafts issued, upon presentation thereof, or any such wire transfer instructions, upon receipt thereof, in each case, in respect of claims paid pursuant to this Order and (ii) rely upon representations of the Debtors as to which such checks, drafts or wire transfers are in payment of claims pursuant to this Order; and it is further

ORDERED that nothing herein shall be deemed to constitute the post-petition assumption of any executory contract; and it is further

ORDERED that the requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived; and it is further

2

ORDERED that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion; and it is further

ORDERED that the terms and conditions of this Order shall be immediately enforceable and effective upon its entry; and it is further

ORDERED that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:   March __, 2019
            Wilmington, Delaware

 

_____
UNITED STATES BANKRUPTCY JUDGE