# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MABVAX THERAPEUTICS HOLDINGS, | ) Case No. 19-10603 (CSS) |
| INC., *et al.* | ) |
| | ) (Jointly Administered) |
| Debtors.[1] | ) |

**ORDER (A) ESTABLISHING BIDDING PROCEDURES RELATING TO
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS;
(B) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; (C) APPROVING BIDDING PROTECTIONS FOR THE STALKING
HORSE BIDDER; (D) SCHEDULING A HEARING TO CONSIDER THE
PROPOSED SALE AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND APPROVING THE FORM AND
MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF**

Upon the Motion ("Motion"), dated March 22, 2019, of MabVax Therapeutics Holdings,

Inc. and MabVax Therapeutics, Inc. ("Debtors"), pursuant to sections 105(a), 363 and 365 of

title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (as amended,

"Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy

Court for the District of Delaware ("Local Rules") for entry of an order, *inter alia*, (i)

establishing Bidding Procedures; [2] (ii) approving certain notice procedures with respect to the

Sale; (iii) establishing procedures for the assumption and assignment of executory contracts

related to the Purchased Assets; (iv) approving the Stalking-Horse Bidder Fee and Expense

Reimbursement for the Stalking Horse Bidder; (v) scheduling a hearing to consider such Sale

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MabVax Therapeutics Holdings, Inc. (7903) and MabVax Therapeutics, Inc. (1765). The Debtors' headquarters are located at 11588 Sorrento Valley Road, Suite 20, San Diego, CA 92121.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

and approving the form and manner of notice thereof, and assumption and assignment of executory contracts and unexpired leases and approving the form and manner of notice thereof; (vi) granting related relief; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409; and the Court having concluded and found that the notice of the Motion was proper and sufficient as provided by the Debtors for purposes of granting the relief and that no other or further notice hereof being necessary or required; and the Court having found that the Debtors have articulated good and sufficient reasons in support of the relief requested in the Motion regarding the bidding and sale process, including without limitation, (i) approval of the Bidding Procedures; (ii) approval and authorization to serve the Sale Notice; and (iii) approval of the Stalking-Horse Bidder Fee and Expense Reimbursement to the Stalking Horse Bidder; and it appearing to the Court that based upon the representations contained in the Motion, the issuance of this Order is in the best interest of the Debtors' estates and creditors; and after due deliberation and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as they pertain to the relief granted by entry of this Order, are overruled and denied to the extent they have not been withdrawn, waived, settled or otherwise resolved.

3.      The Stalking Horse APA is hereby approved as the form of asset purchase agreement ("Form APA") for purposes of the Auction, and is appropriate and reasonably

calculated to enable the Debtors and other parties in interest to easily compare and contrast the differing terms of the Bids presented at the Auction. For the avoidance of doubt, without limitation, nothing in the Form APA or in any Bid shall be determinative of the issue of allocation of sale proceeds, or prejudice the rights of parties in interest related thereto.

4.     The Bidding Procedures attached hereto as **Exhibit 1** are approved.  The process for conducting the Auction set forth in the Bidding Procedures (i) is designed to maximize the value to be achieved for the Purchased Assets; (ii) will ensure a competitive and efficient bidding process; and (iii) is fair and reasonable under the circumstances.  The Bidding Procedures shall govern the submission, receipt and analysis of all Bids relating to the Sale and any party desiring to submit a Bid shall do so strictly in accordance with the terms of the Bidding Procedures and this Order.

5.     As further described in the Bidding Procedures, a potential Bidder who desires to make a Bid for the Purchased Assets that satisfies the bidding requirements set forth in the Bidding Procedures shall deliver its Bid, so as to be received no later than 4:00 p.m. (Prevailing ET) on **[May 2, 2019: 20 days after entry of this Order]**, 2019 ("Bid Deadline") by: (1) the Debtors, c/o The Rosner Law Group, 824 N. Market Street, Suite 810, Wilmington, DE 19801, Attn:   Frederick   B.   Rosner   (rosner@teamrosner.com)   and   Jason   Gibson (gibson@teamrosner.com); (2) counsel to Secured Creditor, Greenberg Traurig LLP, One International  Place,  Suite  2000,  Boston,  MA     02110,  Attn:  J.  Gregory  Milmoe (milmoeg@gtlaw.com).

6.     The form of Cure Notice attached hereto as **Exhibit 2** is reasonably calculated to provide counterparties to the Assumed Contracts and Assumed Leases with proper notice of the intended assumption and assignment of the Assumed Contracts and Assumed Leases and any

{00025209.3 }

cure amounts relating thereto; and the procedures for objecting to assumption or assignment of the Assumed Contracts and Assumed Leases and are hereby approved.

7.     The Stalking-Horse Bidder Fee and the Expense Reimbursement are hereby approved as actual and necessary costs and expenses of preserving the Debtors' estates, and are administrative expenses within the meaning of sections 503 and 507 of the Bankruptcy Code. The Stalking-Horse Bidder Fee and the Expense Reimbursement are (i) reasonable and appropriate, particularly in light of the size and nature of the Sale and the efforts and costs and expenses that have been, and are continuing to be, expended by the Stalking Horse Bidder notwithstanding that the proposed transaction is subject to higher and/or better offers for the Purchased Assets, (ii) were negotiated by the parties at arms-length and in good faith, and the Stalking Horse Bidder would not have entered into the Stalking Horse APA in the absence of the Debtors' obligation to pay such fees if triggered, and (iii) is necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed transaction on the terms set forth in the Stalking Horse APA.  The Debtors are authorized to pay the Stalking-Horse Bidder Fee and the Expense Reimbursement, without further order of the Court, to the Stalking Horse Bidder in the event that the Stalking-Horse Bidder Fee and/or the Expense Reimbursement become payable under the terms of the Stalking Horse APA.

8.     The Stalking Horse Bid is a Qualified Bid and the Stalking Horse Bidder is a Qualified Bidder for all purposes and requirements of the Bidding Procedures, and shall be deemed to have satisfied all of the requirements that a Bidder must satisfy to be a Qualified Bidder under the Bidding Procedures.  The Stalking Horse Bidder shall be entitled to credit bid, as a component of any or all Qualified Bids (as defined in the Bidding Procedures), all or a

portion of the "Obligations" (as defined in the DIP Credit Agreement) outstanding under the DIP Credit Agreement, in an amount not to exceed $500,000).

9.      If the Stalking Horse Bid is the only Qualified Bid received by the Bid Deadline, no Auction for the Purchased Assets will be held, the Stalking Horse Bid will be deemed the Successful Bid, and the Debtors will proceed to request at the Sale Hearing that the Court approve the Sale Transaction in accordance with the Stalking Horse APA, including that the Sale Order be entered by the Court and that the Sale Order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) of the Bankruptcy Rules.

10.     Auction. If at least one Qualified Bid other than the Stalking Horse Bid is received by the Bid Deadline, the Debtors shall conduct an Auction in accordance with the terms of the Bidding Procedures on [the date that is 4 days after the Bid Deadline], 2019 at 9:00 a.m. (Prevailing ET) at the offices of The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801.  The Debtors shall file a notice with the Court if the date, time or place of the Auction is changed following entry of this Order.  Each Bidder attending the Auction shall be required to confirm that it has not engaged in any collusion with respect to its Bid or the Sale. The Auction will be conducted openly, all creditors of the Debtors shall be permitted to attend the Auction, and the Auction shall be recorded stenographically by a certified court reporter.

11.     Sale Hearing.  The hearing to approve the Sale of the Purchased Assets will be held on **[May 15, 2019: 9 days after Auction]** if an Auction is held, or [**May 13, 2019: 9 days after the Bid Deadline**] if no Auction is held; such hearing may be adjourned by the Debtors without further notice other than an announcement in open Court at the Sale Hearing or filing of a notice of adjournment of such Sale Hearing in these cases.  At the Sale Hearing, the Debtors

will request that the Court (a) approve the Successful Bid, including any Replacement DIP Facility; and (b) enter the Sale Order providing for this relief.

12.    If the Court enters an order approving the sale of the Purchased Assets to a Successful Bidder other than the Stalking Horse Bidder, then on the first business day following entry of such Sale Order, the Debtors shall indefeasibly pay a portion of the Good Faith Deposit of such Successful Bidder to the Stalking Horse Bidder, in accordance with the DIP Credit Agreement, to satisfy all outstanding obligations of the Debtors thereunder (including all principal, accrued interest and fees contemplated thereby) (in an amount not to exceed $500,000), and the Stalking Horse Bidder shall have no further obligations of any kind under the DIP Credit Agreement.   Contemporaneously with such payment, the Debtors shall pay an additional portion of the Good Faith Deposit of the Successful Bidder to Stalking Horse Bidder to indefeasibly pay and satisfy in full the Stalking-Horse Bidder Fee and Expense Reimbursement.   The remaining amount of the Good Faith Deposit of the Successful Bidder shall be held by the Debtors until the closing of the transaction contemplated by the Successful Bid and applied in accordance therewith.   If the transaction with the Successful Bidder fails to close on or before the Outside Date (as defined in the Stalking Horse APA) or any similar deadline set forth in a Successful Bidder's Asset Purchase Agreement, the remaining amount of such Successful Bidder's Good Faith Deposit shall be forfeited to, and retained by, the Debtors. In addition, in the event the Good Faith Deposit of the Successful Bidder is insufficient to satisfy in full all obligations owing under the DIP Loan Agreement, the Debtors shall pay the remainder in full as promptly as possible from the proceeds of the sale to the Successful Bidder or any other source

13.     <u>Sale Objection Deadline</u>.  The deadline for objections to the Sale of the Purchased Assets shall be **[May 13, 2019: 7 days after the Auction]** at 4:00 p.m. (Prevailing ET), if an Auction is held, and [**May 10, 2019: 7 days after the Bid Deadline**] at 4:00 p.m. (Prevailing ET), if no Auction is held.  Objections, if any, shall be in writing, filed with the Court and served upon (1) the Debtors, c/o The Rosner Law Group, 824 N. Market Street, Suite 810, Wilmington, DE 19801, Attn: Frederick B. Rosner (rosner@teamrosner.com) and Jason Gibson (gibson@teamrosner.com); (2) counsel for the Stalking Horse Bidder, Covington & Burling LLP, 620 8th Avenue, New York, NY 10018, Attn: Dianne Coffino (dcoffino@cov.com) and Martin Beeler (mbeeler@cov.com), so as to be actually received on or before the Sale Objection Deadline.  Service via email is acceptable.

14.     The failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

15.     <u>Sale Notice</u>.  Within two days of entry of this Order, the Debtors shall serve the notice of Sale Hearing substantially in the form attached hereto as **Exhibit 3** (the "<u>Sale Notice</u>") via first class mail, postage pre-paid on the following parties: (i) the Office of the United States Trustee for the District of Delaware; (ii) any party known or reasonably believed to have asserted any lien, claim or encumbrance or other interest in the Purchased Assets; (iii) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Purchased Assets; (iv) the Internal Revenue Service; and (v) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b).  Such notice is reasonably

calculated to provide all interested parties with timely and proper notice of the proposed Sale and is therefore approved. No other or further notice of the Sale or Sale Hearing is required.

16.  <u>Assumption and Assignment Procedures</u>. With respect to any Assumed Contract or Assumed Lease, the Debtors shall file with the Court and serve on each party to an Assumed Contract or Assumed Lease the Cure Notice setting forth the amount of cure owed thereunder according to the Debtors' books and records. The Cure Notice shall state (i) the Cure Amount, if any, (ii) notify each party that such party's contract may be assumed and assigned to the Successful Bidder, and (iii) state the Objection Deadline (as defined below). The Cure Notice shall be filed and served (i) within one day of the Auction, if an Auction is held, and (ii) within one day after the Bid Deadline, if no Auction is held.

17.  The Cure Objection Deadline and the deadline to object to the assumption and assignment of any Assumed Contract or Assumed Lease (the "<u>Assumption and Assignment Objection</u>") shall be 4:00 p.m. (Prevailing ET) on **[May 13, 2019: 7 days after the Auction]** at 4:00 p.m. (Prevailing ET), if an Auction is held, and at 4:00 p.m. (Prevailing ET) on **[May 10, 2019: 7 days after the Bid Deadline**], if no Auction is held (the "<u>Objection Deadline</u>"). Any objection to the Cure Amount must state with specificity what cure amount the party to the Assumed Contract or Assumed Lease believes is required to be paid with appropriate documentation in support thereof. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Assumed Contract or Assumed Lease or other document as of the date of the Cure Notice. Any objections not resolved between the parties shall be heard at the Sale Hearing.

18.  Any counterparty to any Assumed Contract or Assumed Lease who does not file a Cure Objection and/or an Assumption and Assignment Objection by the Objection Deadline,

shall be deemed to have consented to the assumption and assignment of its Assumed Contract or Assumed Lease and forever barred from objecting to the assumption and assignment of the Assumed Contract or Assumed Lease on any grounds, including lack of adequate assurance, or asserting or claiming against the Debtors or any Successful Bidder that any Cure Amount (other than the Cure Amount listed on the Cure Notice) is due or conditions to assumption and assignment must be satisfied under such Assumed Contract or Assumed Lease.

19.      The Good Faith Deposits of any Bidder, including the Stalking-Horse Deposit (each as defined in the Bidding Procedures), and any other amounts shall be held by the Debtors in a segregated account and shall not become property of the Debtors' bankruptcy estates unless such Good Faith Deposit is otherwise due and payable to the Debtors in accordance with the applicable Asset Purchase Agreement and Bidding Procedures.

20.      The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

21.      To the extent there is any inconsistency between the terms of this Order and the Bidding Procedures, the terms of this Order shall control.

22.      Notwithstanding any applicability of Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

23.      This Court retains jurisdiction with respect to all matters, claims, rights or disputes arising from, based upon or related to this Order.

Dated: [April _____], 2019                     BY THE COURT

                                               _____

                                               United States Bankruptcy Judge

## Exhibit 1

## Bidding Procedures

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MABVAX THERAPEUTICS HOLDINGS, INC., *et al.*,[1] | ) ) | Case No. 19-10603 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## BIDDING PROCEDURES

MabVax Therapeutics Holdings, Inc. and MabVax Therapeutics, Inc. (together, the "Debtors" or "Sellers"), seek to sell substantially all of the assets of their businesses, including the development of therapeutic antibodies and CAR-Ts ("Purchased Assets").

The Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") on March 21, 2019, in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). The Debtors' chapter 11 cases are being jointly administered under Case No. 19-10603 (CSS).

In connection with the sale process, the Debtors filed a motion ("Bidding Procedures Motion"), dated March 21, 2019 seeking approval of these procedures and approval of the sale to the party that submits, in the Debtors' business judgment, the highest or best offer for the Purchased Assets.[2] [Docket No. [__]] On [April 12], 2019, the Bankruptcy Court entered an order ("Bidding Procedures Order") that, among other things, authorized the Debtors to determine the highest or otherwise best offer for the Purchased Assets through the process and procedures set forth below ("Bidding Procedures"). [Docket No. __]

### Stalking Horse Bidder

1.      An asset purchase agreement ("Stalking Horse APA"), dated as of March 20, 2019, has been entered into between the Debtors, as sellers, and BioNTech Research and Development, Inc., as buyer ("Stalking Horse Bidder"). The Stalking Horse APA contemplates a sale of the Purchased Assets to the Stalking Horse Bidder on the terms set forth in the Stalking Horse APA under Sections 105, 363 and 365 of the Bankruptcy Code ("Stalking Horse Bid").

---

[1]      The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MabVax Therapeutics Holdings, Inc. (7903) and (ii) MabVax Therapeutics, Inc. (1765). The Debtors' mailing address is 11535 Sorrento Valley Road, Suite 400, San Diego, CA 92121.

[2]      Terms not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

2.       The Stalking Horse APA further provides that the Stalking Horse Bidder will be entitled to a Termination Fee equal to 5% of the Purchase Price and an Expense Reimbursement ("Expense Reimbursement") in an amount up to $250,000.00 of reasonable and documented expenses upon sellers consummating a Competing Transaction.  In the Bidding Procedures Order, the Bankruptcy Court approved the Stalking Horse APA, and authorized its use as a template for the sale of the Debtors' assets.

### Access to Diligence Materials

3.       To participate in the bidding process and to receive access to due diligence ("Diligence Materials"), a party must submit to the Debtors: (i) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder; and (ii) reasonable evidence demonstrating the party's financial capability to consummate a sale transaction on a timely basis for the Purchased Assets (a "Sale Transaction").  Parties interested in receiving access to the Diligence Materials should contact Jason A. Gibson (gibson@teamrosner.com), at The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801, to request a form of confidentiality agreement.

4.       A party who qualifies for access to Diligence Materials shall be an "Interested Bidder."  The Interested Bidder will have the time and opportunity to conduct reasonable due diligence under the time deadlines provided herein.  The Debtors reserve the right to withhold any Diligence Materials that the Debtors, in consultation with their professionals, determine are business-sensitive or otherwise not appropriate for disclosure to an Interested Bidder.  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Interested Bidder.

5.       Each Interested Bidder and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Interested Bidder or Qualified Bidder, as applicable, and its contemplated transaction for the Purchased Assets.

### Purchased Assets to Be Sold Free and Clear

6.       Except as otherwise provided in the asset purchase agreement submitted by a Successful Bidder (as defined below) (including any exhibits or schedules thereto) all of the Debtors' right, title and interest in and to the Purchased Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Liens") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens to attach to the net proceeds of the sale of the Purchased Assets with the same validity and priority as such Liens applied against the Purchased Assets.

### Bidding Process

7.       The Debtors and their advisors shall (i) determine whether any Interested Bidder is a Qualified Bidder (as defined below), (ii) respond to the requests of Interested Bidders in

conducting their due diligence, (iii) receive offers from Qualified Bidders,   (iv) negotiate any offers made to purchase the Purchased Assets, and (v) conduct the Auction, if necessary.

***Key Dates For Potential Competing Bidders***

| | |
|---|---|
| **Bid Deadline**: | **[May 2, 2019: 20 days after the Bidding Procedures Order is entered] at 4:00 p.m. (Prevailing ET).** |
| **Auction**[3]: | **[May 6, 2019: 3 days after the Bid Deadline] at 9:00 a.m. (Prevailing ET).** |
| **Sale Hearing**: | **[May 15, 2019: 9 days after the Auction] at ____ _.m. (Prevailing ET), if an Auction is held, and [May 13, 2019: 9 days after the Bid Deadline] at_.m. (Prevailing ET) if no Auction is held.** |

8.     To be eligible to be considered by the Debtors in the bid submission process, each offer, solicitation or proposal ("Bid"), and each Interested Bidder submitting such a Bid ("Bidder"), must be determined by the Debtors, in consultation with their professionals, to satisfy each of the following conditions:

        (a)    Good Faith Deposit:   A competing Bid must be accompanied by a $370,000 cash deposit into a segregated account established by the Debtors and actually received by the Bid Deadline (the "Good Faith Deposit").   The Deposit Amount paid by the Stalking Horse Bidder pursuant to the terms of the Stalking Horse APA shall be paid into a segregated account in accordance with the terms of the Stalking Horse APA and shall be considered a Good Faith Deposit for purposes of these Bidding Procedures ("Stalking-Horse Deposit").

        (b)    Revised Agreement:   A competing Bid must be based on the Stalking Horse APA attached hereto as **Exhibit A** and must include a binding, executed offer, signed by an authorized representative of such Bidder, pursuant to which the competing Bidder proposes to effectuate a Sale Transaction (an "Asset Purchase Agreement"), which must be on substantially the same terms as those contained in the Stalking Horse APA.  A competing Bid also must include a copy of a redline reflecting all of the changes to the Stalking Horse APA requested by the Bidder ("Redline APA").

---

[3]     An Auction will only be held if there is one or more Qualified Bidder, other than the Stalking Horse Bidder.

(c)     <u>Minimum Overbid</u>:  A competing Bid must include a minimum overbid of $100,000.  Subsequent bids also must be at least $100,000 more than the preceeding bid.

(d)     To be considered a Qualified Bid, such competing Bid must have a value that the Debtors determine in their reasonable business judgment is greater $4,235,000 or greater.  This amounts represents the sum of (i) the Purchase Price provided for in the Stalking Horse APA ($3,700,000), (ii) the Stalking-Horse Bidder Fee ($185,000.00), (iii) the Expense Reimbursement ($250,000.00), and (iv) a minimum overbid of $100,000.

(e)     <u>Designation of Assigned Contracts and Leases</u>:  A competing Bid must identify with particularity each and every executory contract and unexpired lease with respect to which the Bidder seeks assignment from the Debtors, and whether any cure costs will be assumed by the Bidder; provided, however, the Bidder's Asset Purchase Agreement may contain provisions allowing for the removal or addition of assumed executory contracts and unexpired leases on substantially the same terms as provided for in the Asset Purchase Agreement.

(f)     <u>Designation of Assumed Liabilities</u>.  A competing Bid must identify with particularity any and all liabilities that the Bidder proposes to assume, and, if limited in amount, set forth the maximum amount to be assumed; provided, however, the Bidder's Asset Purchase Agreement may contain provisions allowing for the removal or additional of assumed liabilities on substantially the same terms as provided for in the Asset Purchase Agreement.

(g)     <u>Corporate Authority</u>:  A competing Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction.

(h)     <u>Disclosure of Identity of Bidder</u>:  A competing Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Purchased Assets, including any equity holders, in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such competing Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.  A competing Bid must also fully disclose any connections or agreements with the Debtors, or any other known, potential or prospective Bidder, Interested Bidder or Qualified Bidder, and/or any officer, director or equity holder of the Debtors.

(i)     <u>Proof of Financial and Other Ability to Perform</u>:  The Stalking Horse Bidder is a Qualified Bidder and has provided proof of its financial ability to perform.    Any other Bid must include written evidence that demonstrates, as determined by the Debtors that the Bidder has the necessary financial ability to close the Sale Transaction, and can provide adequate assurance of future performance under all contracts to be assumed and assigned in the Sale Transaction.   Such information must include, *inter alia*, the following:

     (i)     contact names and numbers for verification of financing sources;

     (ii)     evidence of the competing Bidder's internal resources and/or proof of unconditional debt funding commitments from a recognized banking institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid as needed to close the Sale Transaction; and

     (iii)     any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such competing Bidder has the ability to close the Sale Transaction and provide the Replacement DIP Facility.

(j)     <u>No Contingencies</u>:  A competing Bid must be binding and may <u>not</u> be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of unperformed due diligence.

(k)     <u>Irrevocable</u>:  A competing Bid must be irrevocable until five (5) business days after the Sale Hearing, <u>provided</u> that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, in accordance with the terms and conditions of the Bidding Procedures.

(l)     <u>Compliance with Diligence Requests</u>:  A competing Bidder submitting a Bid must have promptly complied with reasonable requests for additional information and due diligence access from the Debtors to the satisfaction of the Debtors.

(m)     <u>Confidentiality Agreement</u>:   To the extent not already executed, the competing Bid must include an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors.

(n)     Termination Fees:  Other than with respect to the Stalking Horse Bidder, the competing Bid must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the competing Bid, the Bidder waives the right to any such fee and the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid.

(o)     Closing Date:  The competing Bid must include a commitment to close a sale of the Purchased Assets by May 16, 2019.

(p)     Bid Deadline:  The following parties must receive a Bid in writing (in both PDF and Word format), on or before the Bid Deadline: (1) the Debtors, c/o The Rosner Law Group, 824 N. Market Street, Suite 810, Wilmington, DE 19801, Attn: Frederick B. Rosner (rosner@teamrosner.com) and Jason Gibson (gibson@teamrosner.com); and (2) counsel to Secured Creditor, Greenberg Traurig LLP, One International Place, Suite 2000, Boston, MA 02110, Attn: J. Gregory Milmoe (milmoeg@gtlaw.com).

9.     **Competing Bids must be submitted on or before the Bid Deadline of [May 2, 2019: 20 days after the Bidding Procedures Order is entered] at 5:00 p.m. (Prevailing ET).** A competing Bid received from a Bidder on or before the Bid Deadline that meets the requirements of paragraphs a-p above, as determined by the Debtors in consultation with their professionals, shall constitute a "Qualified Bid," and such competing Bidder shall constitute a "Qualified Bidder"; provided that if the Debtors receive a Bid prior to the Bid Deadline that is not a Qualified Bid the Debtors may provide the competing Bidder with the opportunity to remedy any deficiencies prior to the Bid Deadline; provided, further, that, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtors to the satisfaction of the Debtors, the Debtors may, after consulting with their professionals, disqualify any Qualified Bidder and Qualified Bid, in the Debtors' discretion, and such Qualified Bidder shall not be entitled to attend or participate in the Auction.  Upon determination that a competing Bid constitutes a Qualified Bid, the Debtors shall, within one (1) day of such determination, but in no event later than one day before the Auction, inform the Qualified Bidder that its Bid is a Qualified Bid, and provide counsel to the Stalking Horse Bidder with a copy of the Qualified Bid.

10.     For the avoidance of doubt, the Stalking Horse Bid is a Qualified Bid and the Stalking Horse Bidder is a Qualified Bidder for all purposes and requirements pursuant to the Bidding Procedures, and shall be deemed to have satisfied all of the requirements that a Bidder must satisfy to be a Qualified Bidder under the Bidding Procedures, including satisfying all reasonable requests for information and due diligence requested by the Debtors.  The Stalking Horse Bidder is authorized to submit any Minimum Overbid during the Auction, in each instance without further qualification required of the Stalking Horse Bidder, and the Stalking Horse Bidder will be deemed to be the Backup Bidder only in accordance with the terms of the Stalking Horse APA and with the prior written consent of the Stalking Horse Bidder, exercisable in its sole and absolute discretion.

11.     Each Qualified Bidder, by submitting a competing Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party, including the Debtors and their agents and representatives (other than as set forth in their Asset Purchase Agreement or as may be set forth in a definitive agreement executed by the Debtors), regarding the Debtors, the Purchased Assets, these Bidding Procedures or any information provided in connection therewith.

### The Auction

12.     If at least one Qualified Bid other than the Stalking Horse Bid is received by the Bid Deadline, the Debtors will hold an auction to determine the highest or otherwise best qualified bid ("Auction") on **[May 6, 2019: 3 days after the Bid Deadline] at 9:00 a.m. (Prevailing ET)** at the offices of The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801. Only the Debtors, the Stalking Horse Bidder, any other Qualified Bidders who have submitted Qualified Bids and creditors of the Debtors and their representatives and counsel may attend the Auction (such attendance to be in person) and only the Stalking Horse Bidder and such other Qualified Bidders shall be entitled to make any Bids at the Auction.

13.     The Debtors will select the Qualified Bid that they determine to be the highest or best Qualified Bid ("Baseline Bid") to serve as the starting point at the Auction.  Selection of the Baseline Bid shall take into account all relevant considerations, including, without limitation: (i) payment of the Stalking-Horse Bidder Fee ($185,000.00), (ii) payment of the Expense Reimbursement ($250,000.00), (iii) the financial condition of the applicable Qualified Bidder, (iv) the assumption of any liabilities by the Qualified Bidder under the applicable Asset Purchase Agreement, and (v) the certainty of closing.  The Debtors will provide notice of the selected Baseline Bid to all Qualified Bidders (including the Stalking Horse Bidder) and the Pre-Petition Lender at lease one day before the Auction.

14.     At the Auction, participants will be permitted to increase their bids and improve their terms.  Bidding for the Purchased Assets will start at the purchase price and terms proposed in the Baseline Bid.  The bidding increments for bids at the outset of the Auction shall be $100,000.00 over the Baseline Bid, plus assumption of the obligations set forth in the Stalking Horse APA.  If the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of (i) the Stalking-Horse Bidder Fee ($185,000.00), (ii) the Expense Reimbursement ($250,000.00) and (iii) the DIP Obligations (in an amount not to exceed $500,000).  Subsequent incremental bids shall be in writing on bid forms provided at the beginning of the Auction.  The Stalking Horse Bidder shall have the right to credit bid any and all "Obligations" (as defined in the DIP Credit Agreement) outstanding under the DIP Facility, but in no event shall such Obligations exceed $500,000.

15.     The Debtors may at any time adopt rules for the Auction that the Debtors reasonably determine to be appropriate to promote the goals of the sale process, provided that such rules are not in conflict with these Bidding Procedures and are disclosed to each Qualified Bidder participating in the Auction.  No Auction rules adopted by the Debtors will modify any of the terms of the Stalking Horse APA or the rights of the Stalking Horse Bidder under the Bid

Procedures (as may be consensually modified at the Auction) without the consent of the Stalking Horse Bidder. The Auction will be recorded stenographically by a certified court reporter.

### If No Competing Bids, No Auction Will be Held

16.    If the Debtors do not receive any Qualified Bids other than the Stalking Horse Bid: (a) the Debtors will not hold an Auction; (b) the Stalking Horse Bid will be the Successful Bid and the Stalking Horse Bidder will be named the Successful Bidder (as defined below); and (c) the Debtors will proceed to request at the Sale Hearing (as defined below) that the Bankruptcy Court approve the Sale Transaction in accordance with the Stalking Horse APA, including that the Sale Order be entered by the Bankruptcy Court and that the Sale Order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) of the Bankruptcy Rules, permitting closing to occur without delay.

### Consent to Jurisdiction

17.    All Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the bidding process, the Auction, the Sale Transaction, and any other matter relating to, or contemplated by, the Stalking Horse APA and any other Bid. At the commencement of the Auction, each Qualified Bidder shall be required to confirm, including, at the Debtors' request, by affidavit, the Qualified Bidder's good faith, within the meaning of Section 363(m) of the Bankruptcy Code, and that it has not engaged in any collusion with any other bidder or prospective bidder, or with the Debtors with respect to the bidding process, the Auction, or the Sale Transaction.

### Selection of a Successful Bid and a Backup Bid

18.    The Auction shall continue in additional rounds of bidding until the Debtors select, in the exercise of their business judgment, the Bid that is the highest or otherwise best Qualified Bid for all or substantially all of the Purchased Assets ("Successful Bid" and, the Bidder submitting such Successful Bid, "Successful Bidder") and the next highest or next best Qualified Bid ("Backup Bidder"). This determination shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates and may include, but are not limited to, the following: (a) the total amount and nature of the consideration to be received by the Debtors' estates, including the assumption of any liabilities of the Estate; (b) the number, type and nature of any changes to the Stalking Horse APA requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Purchased Assets and the cost to the Debtors' estates of such modifications or delay; (d) the Bidder's ability to close a transaction and the timing thereof; and (e) the net benefit to the Debtors' estates (collectively, "Bid Assessment Criteria"). The Stalking Horse Bidder will be deemed to be the Backup Bidder only in accordance with the terms of the Stalking Horse APA and with the prior written consent of the Stalking Horse Bidder, exercisable in its sole and absolute discretion. In the event the Debtors select the Stalking Horse APA as the Backup Bid and the Stalking Horse Bidder does not consent to be the Backup Bidder, the Debtors may select the next highest or otherwise best bid submitted by a Qualified Bidder during the Auction, as

determined by the Debtors pursuant to these Bidding Procedures, as the Backup Bid, and the Qualified Bidder that submitted such Qualified Bid will be deemed to be the Backup Bidder.

19.    Subject to the rights of the Stalking Horse Bidder under the Stalking Horse APA, Backup Bidder shall be required to keep its Bid ("Backup Bid") open and irrevocable until the later of: (i) the closing of the transaction with the Successful Bidder; or (ii) 30 days after the Sale Hearing.

20.    The Auction for the Purchased Assets shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of its Successful Bid.

21.    No later than one business day following the Auction, the Debtors shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder and such Successful Bidder's Asset Purchase Agreement, and shall serve such notice via the Bankruptcy Court's Electronic Case Filing system and by mail on any Interested Bidders, the Office of the United States Trustee for the District of Delaware, those parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002 and any other parties which the Bankruptcy Court may direct are entitled to receive such notice.  If the Successful Bidder is not the Stalking Horse Bidder, the notice will summarize any material differences between the terms of such Asset Purchase Agreement and the Stalking Horse APA, if any, and will annex copies of the Asset Purchase Agreement.

22.    Following the Sale Hearing, if the Successful Bidder fails to consummate a  Sale Transaction, the Debtors may deem the Backup Bidder to have the new Successful Bid, and the Debtors will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Backup Bidder.  Subject to the Stalking Horse APA, if the Stalking Horse Bidder consents in its sole discretion to be the Backup Bidder, Backup Bids must remain open until the Debtors' consummation of a sale with the Successful Bidder.

**Sale Is As Is/Where Is**

23.    Except as otherwise set forth in the Asset Purchase Agreement of the Successful Bidder or the Sale Order, the sale of the Purchased Assets pursuant to the Bidding Procedures shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors or their agents.  By submitting a Bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith or with the auction, except as expressly stated in these Bidding Procedures or as set forth in the Asset Purchase Agreement of a Successful Bidder or the Sale Order.

**Sale Hearing**

24.     The Successful Bid and the Backup Bid will be subject to approval by the Bankruptcy Court.  A hearing to approve the Successful Bid and any Backup Bid ("Sale Hearing") shall take place on [the date that is 9 days after the Auction], 2019, or on [the date that is 9 days after the Bid Deadline] if no Auction is held.  If the Successful Bidder is not the Stalking Horse Bidder, such Successful Bidder's Replacement DIP Facility shall also be considered at the Sale Hearing.

25.     The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of Debtors' chapter 11 cases.

26.     The Stalking Horse Bidder, and any other entity that becomes the Successful Bidder, shall have standing and are deemed to be parties in interest with standing to be heard on any motion, hearing or other matter related to the Sale, the Auction, the Stalking Horse APA or any Bid, or other transfer and sale of the Purchased Assets.

**Objections**

27.     Objections, if any, to the Sale Transaction, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; and (c) be filed with the Clerk of the Bankruptcy Court for the District of Delaware (or filed electronically via CM/ECF with the Bankruptcy Court) and actually received by the following parties: (1) the Debtors, c/o The Rosner Law Group, 824 N. Market Street, Suite 810, Wilmington, DE 19801, Attn: Frederick B. Rosner (rosner@teamrosner.com) and Jason Gibson (gibson@teamrosner.com); (2) counsel for the Stalking Horse Bidder, Covington & Burling LLP, 620 8th Avenue, New York, NY 10018, Attn: Dianne Coffino (dcoffino@cov.com) and Martin Beeler (mbeeler@cov.com); (iii) counsel to Prepetition Secured Creditor, Greenberg Traurig LLP, One International Place, Suite 2000, Boston, MA  02110, Attn: J. Gregory Milmoe; (iv) the U.S. Trustee; and (v) counsel to any official committee of unsecured creditors, and counsel to any other official committees appointed pursuant to section 1102 of the Bankruptcy Code so as to be actually received on or before 4:00 p.m. (Prevailing ET) on **[May 13, 2019: 3 days after the Auction]** if an Auction is held, and **[May 10, 2019: 3 days after the Bid Deadline]** if no Auction is held ("Sale Objection Deadline").

**Return of Good Faith Deposits and Stalking-Horse Deposit**

28.     Each of the Good Faith Deposits of all Qualified Bidders, including the Stalking-Horse Deposit, shall be held by the Debtors in a separate segregated account and shall not become property of the Debtors' estates.  Each of the Good Faith Deposits, including the Stalking-Horse Deposit, shall be held pursuant to the terms of the applicable Asset Purchase Agreement.  At the closing of a Sale Transaction, the Successful Bidder will be entitled to a credit for the amount of any Good Faith Deposit, upon the terms set forth herein.  If the Successful Bidder is not the Stalking Horse Bidder, on the first business day following entry of the Sale Order, the Debtors shall pay a portion of the Deposit of such Successful Bidder from the

segregated account corresponding to the Successful Bidder to the Stalking Horse Bidder on account of the full outstanding amount of the Obligations under the DIP Facility, if any such Obligations have been incurred, the Stalking Horse Bidder Fee and the Expense Reimbursement. If the Successful Bidder timely closes the Sale Transaction, the amount of such Successful Bidder's Good Faith Deposit paid in accordance with this section shall be credited towards the purchase price under the applicable Asset Purchase Agreement; provided, however, that if the Stalking Horse Bidder is the Successful Bidder, the Stalking-Horse Deposit shall be credited towards the Purchase Price in accordance with the terms of the Stalking Horse APA.

29.     If a Successful Bidder fails to consummate a Sale Transaction because of a breach that entitles the Debtors to terminate such Asset Purchase Agreement, then the Debtors shall be entitled to retain the Good Faith Deposit of the Successful Bidder as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.  Notwithstanding the foregoing, retention and application by the Debtors of the Stalking-Horse Deposit delivered by the Stalking Horse Bidder shall be governed by the Stalking Horse APA.  The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing.  The Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder within 24 hours after the closing of the Sale Transaction with the Successful Bidder.  The return of the Stalking-Horse Deposit shall be governed by the terms of the Stalking Horse APA.

### Reservation of Rights of the Debtor

30.     Except as otherwise provided in the Stalking Horse APA, the Bidding Procedures or the Bidding Procedures Order, the Debtors further reserve the right as they may reasonably determine to be in the best interest of the Debtors' estates to: (a) determine which Bidders are Interested Bidders; (b) determine which competing Bidders are Qualified Bidders; (c) determine which competing Bids are Qualified Bids; (d) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (e) reject any competing Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (3) contrary to the best interests of the Debtors and their estates; (f)  waive non-compliance with any of the terms and conditions set forth herein as it determines to be in the best interests of the Debtors' estates, their creditors, and other parties in interest; (g) impose additional terms and conditions with respect to all potential Bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Sale Hearing in open court, or by filing a notice on the docket of the Debtors' chapter 11 cases, without further notice to creditors or other parties in interest; and (j) implement additional procedural rules that the Debtors determine, in their business judgment, will better promote the goals of the bidding process; provided, however, that any modification or additions to the Bidding Procedures shall not be materially inconsistent with the Bidding Procedures Order or any other order of the Bankruptcy Court or the Stalking Horse APA, the Bankruptcy Code, or the Bankruptcy Rules, and shall be disclosed to each Qualified Bidder.

### Jurisdiction

31.    The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Bidding Procedures, the Auction, the Successful Bid, the Sale Hearing, the Sale, and any other matter that in any way relates to the foregoing.

**Exhibit A**

**Stalking Horse APA**

**<u>Exhibit 2</u>**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MABVAX THERAPEUTICS HOLDINGS, | ) Case No. 19-10603 (CSS) |
| INC., *et al.* | ) |
| | ) (Jointly Administered) |
| Debtors.[1] | ) |

## <u>NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF CONTRACTS</u>

**PLEASE TAKE NOTICE THAT** on **March 21, 2019**, MabVax Therapeutics Holdings, Inc. and MabVax Therapeutics, Inc. (together, the "<u>Debtors</u>"),[2] filed the *Debtors' Motion for Entry of Orders (I) (A) Establishing Bidding Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (B) Establishing Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Approving Bidding Protections for the Stalking Horse Bidder; and (D) Scheduling a Hearing to Consider the Proposed Sale and Assumption and Assignment of Executory Contracts and Unexpired Leases and Approving the Form and Manner of Notice Thereof and (II) (A) Approving the Proposed Sale; (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "<u>Sale Motion</u>") [Dkt. No. [__]].

**PLEASE TAKE FURTHER NOTICE** that, by the Sale Motion, the Debtors seek, among other things, to (A) sell substantially all of the assets of their businesses, including the development of therapeutic antibodies and CAR-Ts (the "<u>Purchased Assets</u>") and (B) assume and assign certain executory contracts and unexpired leases to the Successful Bidder free and clear of liens, claims, encumbrances and other interests pursuant to sections 363 and 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, an asset purchase agreement, dated as of **March 20, 2019**, has been entered into between the Debtors, as sellers, and [insert name of buyer], as buyer (the "<u>Stalking Horse Bidder</u>") to sell the Purchased Assets.

**PLEASE TAKE FURTHER NOTICE** that on **[April 12],** 2019, the Bankruptcy Court entered an Order (the "<u>Bidding Procedures Order</u>") approving the Bidding Procedures (the "<u>Bidding Procedures</u>") as attached to the Sale Motion, which set the key dates and times related to the sale of the Purchased Assets.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MabVax Therapeutics Holdings, Inc. (7903) and MabVax Therapeutics, Inc. (1765).  The Debtors' headquarters are located at 11588 Sorrento Valley Road, Suite 20, San Diego, CA 92121.

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or in the Bidding Procedures (as defined below).

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Purchased Assets to the Successful Bidder (the "Sale Hearing") before the Honorable Christopher S. Sontchi at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom #6, on **[May 15, 2019: 9 days after the Auction] at __:00 _.m. (Prevailing ET)**, if an Auction is held, or on **[May 13, 2019: 9 days after the Bid Deadline] at __:00 _.m. (Prevailing ET)**, if no Auction is held, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by filing a notice on the Court's docket for these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have indicated on Schedule 1 attached hereto a list of the executory contracts and unexpired leases that may be assumed and assigned to the Stalking Horse Bidder or such other Successful Bidder for the Purchased Assets (each, an "Assumed Contract" or "Assumed Lease," respectively) along with the cure amounts that the Debtors believe must be paid to cure all prepetition defaults (in each instance, the "Cure Amount"). If you agree with the Cure Amount listed on Schedule 1, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that any nondebtor party shall file an objection to the Cure Amount (a "Cure Objection") no later than **[May 13], 2019 at 12:00 p.m. (Prevailing ET)** if an Auction is held and **[May 10], 2019 at 12:00 p.m. (Prevailing ET)** if no Auction is held (the "Cure Objection Deadline"). Any Cure Objection must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the District of Delaware; and (iii) state with specificity the cure the party to the Assumed Contract or Assumed Lease believes is required with appropriate documentation in support thereof. **IF NO OBJECTION IS TIMELY RECEIVED, THE CURE AMOUNT SET FORTH IN THIS NOTICE SHALL BE CONTROLLING NOTWITHSTANDING ANYTHING TO THE CONTRARY IN ANY ASSUMED CONTRACT OR ASSUMED LEASE OR OTHER DOCUMENT AS OF THE DATE OF THIS NOTICE**. Any objections not resolved between the parties shall be set for a hearing as fixed by the Court.

**PLEASE TAKE FURTHER NOTICE** that, contemporaneous with the transmission hereof, the Debtors have filed and served a Notice of the Successful Bid and Successful Bidder. If you would like to receive a copy of the Notice of the Successful Bid and Successful Bidder via e-mail, please provide such information by emailing or calling counsel to the Debtors, Jason Gibson (gibson@teamrosner.com), at The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801 (302-319-6302).

**PLEASE TAKE FURTHER NOTICE** that any counterparty to any Assumed Contract or Assumed Lease who wishes to object to the assumption and assignment of any Assumed Contract or Assumed Lease to the Successful Bidder ("Assumption and Assignment Objection"), including any objection based on lack of adequate assurance of performance of the contract by the Successful Bidder, shall file an objection no later than no later than **[May 13], 2019 at 12:00 p.m. (Prevailing ET)** if an Auction is held and **[May 10], 2019 at 12:00 p.m. (Prevailing ET)**

if no Auction is held.  Any Assumption and Assignment Objection must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the District of Delaware; and (iii) state with specificity the legal and factual basis for such objection, and, if based on lack of adequate assurance of performance of the Assumed Contract or Assumed Lease, state with specificity the adequate assurance the party to such Assumed Contract or Assumed Lease believes is required with appropriate documentation in support thereof.  Any party who wishes to be supplied with evidence of adequate assurance of performance may contact counsel to the Debtors, Jason Gibson (gibson@teamrosner.com), at The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801 (302-319-6302).

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection or Assumption and Assignment Objection shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware at 824 N. Market St, Wilmington, DE 19801 and served on: (1) the Debtors, c/o The Rosner Law Group, 824 N. Market Street, Suite 810, Wilmington, DE 19801, Attn: Frederick B. Rosner (rosner@teamrosner.com); Jason Gibson (gibson@teamrosner.com); (2) counsel for the Stalking Horse Bidder, Covington & Burling LLP, 620 8th Avenue, New York, NY 10018, Attn: Dianne Coffino (dcoffino@cov.com) and Martin Beeler (mbeeler@cov.com).

**PLEASE TAKE FURTHER NOTICE** that any counterparty to any Assumed Contract or Assumed Lease who does not file a Cure Objection by the Cure Objection Deadline, shall be forever barred and estopped from objecting to the Cure Amount or asserting or claiming any Cure Amount (other than the Cure Amount listed on this Notice) against the Debtors or any Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that any counterparty to an Assumed Contract or Assumed Lease who does not timely file an Assumption and Assignment Objection shall be deemed to have consented to the assumption and assignment of its Assumed Contract or Assumed Lease to the Successful Bidder and will be forever barred and estopped from objecting to such assumption and assignment on account of the Cure Amount, lack of adequate assurance or any other grounds.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Potential Assumption and Assignment of Contracts is subject to the full terms and conditions of the Sale Motion, Bidding Procedures Order, and Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties in interest to review such documents in their entirety. A copy of the Sale Motion, Bidding Procedures Order, and/or Bidding Procedures may be obtained from counsel to the Debtors, Jason Gibson (gibson@teamrosner.com), at The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801 (302-319-6302).

Dated:  [May __], 2019
Wilmington, Delaware

By: /s/_____.

Frederick B. Rosner (DE #3995)
Jason Gibson  (DE #6091)
The Rosner Law Group LLC
824 N. Market Street
Suite 810
Wilmington, DE 19801
Email: rosner@teamrosner.com;
gibson@teamrosner.com
Telephone: 302-319-6300;
302-319-6302

*Proposed Counsel for the Debtors*

## SCHEDULE 1

**Contracts**

| Counterparty | Counterparty Address | Title/Description of Contract | Cure Cost |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

## Exhibit 3

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MABVAX THERAPEUTICS HOLDINGS, | ) Case No. 19-10603 (CSS) |
| INC., *et al.* | ) |
| | ) (Jointly Administered) |
| Debtors.[1] | ) |

### NOTICE OF SALE HEARING

**PLEASE TAKE NOTICE THAT** on March 21, 2019, MabVax Therapeutics Holdings, Inc. and MabVax Therapeutics, Inc. (the "Debtors"),[2] filed the *Debtors' Motion for Entry of Orders (I) (A) Establishing Bidding Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (B) Establishing Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Approving Bidding Protections for the Stalking Horse Bidder; and (D) Scheduling a Hearing to Consider the Proposed Sale and Assumption and Assignment of Executory Contracts and Unexpired Leases and Approving the Form and Manner of Notice Thereof and (II) (A) Approving the Proposed Sale; (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Sale Motion") [Dkt. No. [__]].

**PLEASE TAKE FURTHER NOTICE** that, by the Sale Motion, the Debtors seek, among other things, to (A) sell substantially all of the assets of their businesses, including assets related to the development of therapeutic antibodies and CAR-Ts (the "Purchased Assets") and (B) assume and assign certain executory contracts and unexpired leases to the Successful Bidder free and clear of liens, claims, encumbrances and other interests pursuant to sections 363 and 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, an asset purchase agreement (collectively with all exhibits and schedules, the "Stalking Horse APA"), dated as of March 20, 2019, has been entered into between the Debtors, as sellers, and BioNTech Research and Development, Inc., as buyer (the "Stalking Horse Bidder") to sell the Purchased Assets.

**PLEASE TAKE FURTHER NOTICE** that on [April 12], 2019, the Bankruptcy Court entered an Order (the "Bidding Procedures Order") approving the Bidding Procedures (the "Bidding Procedures") as set forth in the Sale Motion, which set the key dates and times related to the sale of the Purchased Assets. A copy of the Bidding Procedures Order and the Bidding

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MabVax Therapeutics Holdings, Inc. (7093) and MabVax Therapeutics, Inc. (1765). The Debtors' headquarters are located at 11588 Sorrento Valley Road, Suite 20, San Diego, CA 92121.

[2]     Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or in the Bidding Procedures (as defined below).

Procedures can be obtained by contacting Jason Gibson (gibson@teamrosner.com), at The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801 (302-319-6302).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures, Bids for the Purchased Assets shall be accepted until **[May 2, 2019: 20 days from entry of the Bidding Procedures Order] at 4:00 p.m. (Prevailing ET)** (the "Bid Deadline"). A Bid received from a Bidder on or before the Bid Deadline that meets the requirements of the Bidding Procedures shall constitute a "Qualified Bid."

**PLEASE TAKE FURTHER NOTICE** that if more than one Qualified Bid is received by the Bid Deadline, the Debtors will hold an Auction on **[May 6, 2019: 3 days after the Bid Deadline) at 9:00 a.m. (Prevailing ET)** at the offices of The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801.  Only the Debtors, the Stalking Horse Bidders, any other Qualified Bidders who have submitted Qualified Bids, and creditors of the Debtors and their representatives and counsel may attend the Auction (such attendance to be in person).

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall file and serve a Notice of the Successful Bid and Successful Bidder no later than one business day after the close of the Auction, if an Auction is held, or no later than one business day after the Bid Deadline, if no Auction is held.  If you would like to be served with a Notice of the Successful Bid and Successful Bidder via e-mail, please provide notice of such request by emailing or calling counsel to the Debtors, Jason Gibson (gibson@teamrosner.com), at The Rosner Law Group, 824 N. Market Street, Suite 810, Wilmington, DE 19801 (302-319-6302).

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Purchased Assets to the Successful Bidder (the "Sale Hearing") before the Honorable Christopher S. Sontchi at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom #6, on **[May 15, 2019: 9 days after the Auction] at __:00 _.m. (Prevailing ET)**, if an Auction is held, or on **[May 13, 2019: 9 days after the Bid Deadline], 2019 at __:00 _.m. (Prevailing ET)**, if no Auction is held, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by filing a notice on the Court's docket for these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that objections to the Sale, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the District of Delaware; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware at 824 N. Market St, Wilmington, DE 19801 and served so as to be received no later than **[May 13, 2019: 7 days after the Auction], 2019 at 12:00 p.m. (Prevailing ET)**, if an Auction is held, or on **[May 10, 2019: 7 days after the Bid Deadline], 2019 at 12:00 p.m. (Prevailing ET)**, if no Auction is held, by (1) the Debtors, c/o The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801, Attn: Frederick B. Rosner (rosner@teamrosner.com); Jason Gibson (gibson@teamrosner.com); (2) counsel for the Stalking Horse Bidder, Covington & Burling

LLP, 620 8th Avenue, New York, NY 10018, Attn: Dianne Coffino (dcoffino@cov.com) and Martin Beeler (mbeeler@cov.com).

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE OBJECTION:** ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED AND ESTOPPED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE PROPERTY FREE AND CLEAR OF LIENS CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AFFECTED THEREUNDER.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order contemplates a process to assume and assign executory contracts after the Sale Hearing. To the extent that the Debtors intend to assume and assign an executory contract, such contract counterparty will receive a separate notice consistent with the Bidding Procedures Order approved by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Sale Hearing is subject to the full terms and conditions of the Sale Motion, Bidding Procedures Order, and Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties in interest to review such documents in their entirety. A copy of the Sale Motion may be obtained from [Jason Gibson (gibson@teamrosner.com)], at The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, DE 19801 (302-319-6302).

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT PROPERLY FILE AND SERVE AN OBJECTION OR OTHER RESPONSE TO THE SALE MOTION BY THE OBJECTION DEADLINE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: [April ___], 2019
Wilmington, Delaware

By: _/s/_____ .

Frederick B. Rosner (DE #3995)
Jason Gibson (DE #6091)
The Rosner Law Group LLC
824 N. Market Street
Suite 810
Wilmington, DE 19801
Email: rosner@teamrosner.com;
gibson@teamrosner.com
Telephone: 302-319-6300;
302-319-6302

*Proposed Counsel for the Debtors*