IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MABVAX THERAPEUTICS HOLDINGS, INC., et al.,[1] | ) Case No. 19-10603 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Re: D.I. 9, 28, 31 |

**FINAL ORDER (A) AUTHORIZING
AND APPROVING DEBTOR-IN-POSSESSION
FINANCING AND GRANTING FIRST PRIORITY AND PRIMING
SECURITY INTERESTS AND A SUPERPRIORITY ADMINISTRATIVE
CLAIM IN CONNECTION THEREWITH, (B) APPROVING THE TERMS
AND CONDITIONS OF THAT CERTAIN SENIOR SECURED SUPERPRIORITY
PRIMING DEBTOR-IN-POSSESSION CREDIT AGREEMENT AND RELATED
DOCUMENTS, (C) MODIFYING THE AUTOMATIC STAY TO THE EXTENT
NECESSARY TO ENTER INTO THE DEBTOR-IN-POSSESSION FINANCING AND
EFFECTUATE THE TERMS THEREOF AND (D) GRANTING RELATED RELIEF**

Upon consideration of the Motion (the "Motion") filed by MabVax Therapeutics Holdings, Inc. and MabVax Therapeutics, Inc. (each a "Debtor" and collectively, "Debtors"), seeking, inter alia, (a) authority pursuant to sections 105 and 364(c)(1), (c)(2), (c)(3) and (d)(1) of title 11 of the United States Code ("Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rules 2002-1 and 4001-2, for the Debtors to obtain post-petition loans, advances and other credit accommodations from BioNTech Research and Development, Inc. ("BioNTech" or, in its capacity as lender, "Lender") under that certain Senior Secured Superpriority Priming Debtor-in-Possession Credit Agreement by and between the Lender and the Debtors, substantially in the form attached as **Exhibit B** to the Motion ("DIP Credit Agreement") and that certain Security Agreement between the Lender and the Debtors, attached to the Motion

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MabVax Therapeutics Holdings, Inc. (7903) and (ii) MabVax Therapeutics, Inc. (1765). The Debtors' mailing address is 11535 Sorrento Valley Road, Suite 400, San Diego, CA 92121.

{00025418. }

as **Exhibit C** ("DIP Security Agreement," and together with the DIP Credit Agreement and any other documents required to be executed in connection therewith, collectively, "DIP Loan Documents"), pursuant to which the Lender will be granted, subject in each case to the Carve-Out (as defined below), (i) a superpriority administrative claim pursuant to 11 U.S.C. § 364(c)(1); (ii) first priority security interests in and liens upon substantially all unencumbered property of the Debtors' estates pursuant to 11 U.S.C. § 364(c)(2); (iii) junior security interests in and liens upon property of the Debtors' estates that is subject to an unavoidable lien pursuant to 11 U.S.C. § 364(c)(3) and (iv) first priority priming security interests in and liens upon property of the Debtors' estates that is subject to a prepetition unavoidable lien pursuant to 11 U.S.C. § 364 (d)(1); (b) approval of the terms and conditions of the DIP Loan Documents;[2] and (c) modification of the automatic stay solely to the extent necessary to enter into the proposed financing and effectuate the terms thereof; this Court having conducted an interim hearing on the Motion on March 22, 2019, and this Court having entered, on March 22, 2019, an order granting on an interim basis the relief requested in the Motion [D.I. 28] (the "Interim Order"); and all objections, if any, to the relief requested in the Motion and this Final Order having been withdrawn, resolved or overruled by the Court; and the Lender and Debtors having agreed and stipulated as follows, which stipulations this Court hereby approves and adopts:[3]

    A.    <u>Filing of Petitions</u>.  On March 21, 2019 ("Petition Date"), the Debtors filed voluntary chapter 11 petitions under the Bankruptcy Code thereby commencing the above-captioned bankruptcy cases ("Chapter 11 Case").  Pursuant to sections 1107 and 1108 of the

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed thereto in the DIP Credit Agreement.

[3] Each of the following findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes and contains legal conclusions.

Bankruptcy Code, the Debtors are authorized to operate their business as debtors in possession.

B. <u>Jurisdiction; Core Proceeding</u>. Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District.

C. <u>Need for Funding</u>. The relief sought in the Motion is necessary and in the best interests of the Debtors, their estates and creditors. Without the proposed financing, the Debtors do not have the funds necessary to pay the costs and expenses in connection with (a) the Debtors' administration of this Chapter 11 Case, including, without limitation, payment of the fees and expenses of estate professionals, (b) consummation of the transfer and sale of the Debtors' assets in order to maximize recoveries for the Debtors' creditors, (c) payments required to be made under the Acquisition Agreement, and (d) management and preservation of the Debtors' assets. The Debtors have requested that Lender make loans and advances to Debtors in order to provide funds to pay such costs and expenses. The Lender is willing to make post-petition loans and advances and provide such other credit accommodations pursuant to sections 364(c) and (d)(1) of the Bankruptcy Code and the holder of the Primed Liens has consented to the priming of its liens pursuant to the terms of the DIP Loan Documents. Among other things, entry of this Final Order ("Order") will preserve and maintain the assets of the Debtors' estates, will avoid harm to, and is in the best interests of, the Debtors, their creditors, and their estates.

D. <u>Validity of Primed Liens</u>. The Debtors admit and stipulate that the Liens and security interests of the holder of the Primed Liens constitute valid, binding, enforceable and perfected liens and security interests and are not subject to avoidance, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar

as such liens are subordinated to the DIP Facility Liens and the Carve-Out in accordance with the provisions of this Order); <u>provided, however</u>, the Debtors do not stipulate to, and expressly reserve the right to review, investigate and object to, the validity, enforceability and/or perfection, of any security interest or lien that is or may be asserted by Oxford Finance, LLC ("Oxford") or any third party against any commercial tort claims including, without limitation, the settlement fees and/or fines described in Schedule 2.02(c) to the Acquisition Agreement. The Debtors further reserve their right to investigate and, if appropriate, object to the amount of the claim of any party (except the claims of the DIP Lender for funds advanced under the DIP Facility) including, without limitation, the claim (or any component thereof) of the holder of the Primed Liens. Subject to the Challenge Period (defined below), each stipulation, admission and agreement contained in this Order shall also be binding upon all other parties in interest, including, without limitation, an Official Committee of Unsecured Creditors ("Creditors' Committee"), if any, under all circumstances and for all purposes.

   E. <u>Unavailability of Alternative Financing</u>.  The Debtors are unable to procure unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(b) of the Bankruptcy Code.

   F. <u>Notice</u>.  Under the circumstances, the Debtors have provided due and sufficient notice of the Motion and the relief requested to (i) the United States Trustee, (ii) all creditors known to the Debtors who may have liens against the Debtors' assets, (iii) any applicable taxing authority, (iv) counsel for the Creditors' Committee (if such committee has been appointed), (v) the twenty (20) largest unsecured creditors of the Debtors on a consolidated basis, and (vi) all other creditors and parties in interest requesting notice under Bankruptcy Rule 2002(i).

   G. <u>Business Judgment and Good Faith under Section 364(e) of the Bankruptcy Code</u>.

The terms of the DIP Credit Agreement, the other DIP Loan Documents and this Order have been negotiated in good faith and at arms-length within the meaning of section 364(e) of the Bankruptcy Code, are in the best interests of the Debtors, their creditors and the estates, are fair and equitable under the circumstances, and are enforceable pursuant to their terms. The terms of the DIP Credit Agreement are (i) fair and reasonable and are well within the range of market terms for debtor-in-possession financing; (ii) reflect prudent exercise of business judgment by the Debtors, consistent with their fiduciary duties; (iii) constitute reasonably equivalent value and fair consideration; and (iv) are essential and appropriate for the continued operation and management of the Debtors' business and the preservation of their assets and properties. This Order is subject to, and Lender is entitled to the benefits of, the provisions of section 364(e) of the Bankruptcy Code.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. <u>Authorization to Incur Indebtedness and Enter Into DIP Loan Documents</u>. The Motion is hereby granted and approved as set forth herein on a final basis. Pursuant to sections 364(c) and (d)(1) of the Bankruptcy Code, the Debtors are hereby authorized and empowered to borrow up to the amount of $500,000.00, including the amount of the Loan authorized under the Interim Order, from the Lender, pursuant to the terms of this Order and the terms and conditions set forth in the DIP Credit Agreement and the other DIP Loan Documents. The Debtors were by the Interim Order, and hereby are expressly authorized and directed to execute, deliver, perform and comply with the terms and covenants of the DIP Loan Documents and this Order. The DIP Loan Documents, together with this Order, shall be sufficient and conclusive evidence of the borrowing arrangements between the Debtors and Lender and of the terms and conditions of the DIP Loan Documents, for all purposes. Any DIP Loan Documents entered into by the Debtors prior to the entry of this Order in accordance with the terms of the

Interim Order are hereby approved and ratified in full, and all actions taken by the Debtors and the Lender in connection with or in reliance on the Interim Order are hereby approved and reaffirmed in full as if taken in connection with or in reliance on this Order.

2. <u>Use of Advances Made Under this Order and the DIP Credit Agreement</u>. The Debtors are hereby authorized to use the proceeds of the Loans advanced, and other credit accommodations provided, by Lender under the DIP Credit Agreement to pay the Debtors' reasonable and documented expenses actually incurred in accordance with the terms of the Budget in the form attached to the Motion as **Exhibit D**, subject to any applicable Variance Report(s), in each case as reviewed and approved by the Lender.

3. <u>Grant of Liens and Superpriority Administrative Claim</u>. Effective on and after the date of the Interim Order and hereby ratified by this Order, to secure the prompt payment and performance of any and all Obligations, Liens, liabilities and indebtedness ("<u>DIP Facility Obligations</u>") of the Debtors to Lender of whatever kind or nature or description arising under the DIP Credit Agreement or other DIP Loan Documents, Lender shall have and is hereby granted on a final basis, in each case subject to the Carve-Out: (i) a superpriority administrative claim pursuant to section 364(c)(1) of Bankruptcy Code, having priority over any and all administrative expenses including, without limitation, administrative expenses or claims of the kind specified in sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 365, 503, 506, 507, 546, 552, 726, 1113 and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment; (ii) valid and perfected security interests and liens, senior to all other creditors of the estates of the Debtors, pursuant to section 364(c)(2) of the Bankruptcy Code, in and upon all now existing and hereafter acquired personal and real property and fixtures of the Debtors and their bankruptcy estates, and the proceeds thereof,

of whatever kind or nature, whether acquired prior to or subsequent to the Petition Date (other than the Avoidance Actions), that is not subject to an existing properly perfected and unavoidable lien; (iii) valid and perfected junior security interests and liens in and upon all now existing and hereafter acquired personal and real property and fixtures of the Debtors and their bankruptcy estates, and the proceeds thereof, of whatever kind or nature, whether acquired prior to or subsequent to the Petition Date that is subject to an existing properly perfected and unavoidable Permitted Lien pursuant to section 364(c)(3) of the Bankruptcy Code; and (iv) valid and perfected first priority priming security interests and liens in and upon all now existing and hereafter acquired personal and real property and fixtures of the Debtors and their bankruptcy estates, and the proceeds thereof, of whatever kind or nature, whether acquired prior to or subsequent to the Petition Date that is subject to an existing properly perfected and unavoidable Primed Lien pursuant to section 364(d)(1) of the Bankruptcy Code (collectively, clauses (i), (ii), (iii) and (iv) referred to as the "DIP Facility Superpriority Claims" and "DIP Facility Liens"). The DIP Facility Liens referred to in clause (iv) of the preceding sentence above shall include all funds held in any account of the Debtors and all cash deposited therein or credited thereto from time to time, including any account covered by a Deposit Account Control Agreement entered into by Oxford and the Debtors. For the avoidance of doubt, the DIP Facility Superpriority Claims and the DIP Facility Liens shall be junior only to (i) the Permitted Liens in the case of Liens granted under section 364(c)(3) of the Bankruptcy Code and (ii) the Carve-Out. The liens and claims of the DIP Lender and the Pre-Petition Lender shall be subject and subordinate to the payment, without duplication, of the following fees and claims (the amounts set forth below, together with the limitations set forth therein, collectively, the "Carve-Out"): (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code; and (ii) unpaid fees,

costs, disbursements, charges and expenses incurred at any time before the date of conversion of the Case to a case under Chapter 7 of the Bankruptcy Code (the "Carve-Out Trigger Date") by firms retained by the Debtors whose retention is approved by the Court pursuant to sections 327, 328, 330 or 331 of the Bankruptcy Code ("Carve-Out Expenses"), to the extent such Carve-Out Expenses are allowed by the Court at any time before the Carve-Out Trigger Date not to exceed the amount expressly set forth in the Budget.

4.    No Surcharge of Collateral.  No costs or expenses of administration which have been or may be incurred by the Debtors or any creditor of a Debtor in connection with the Debtors' bankruptcy case, whether proceeding under chapter 11 or chapter 7 of the Bankruptcy Code, are or will be prior to or on a parity with the DIP Facility Superpriority Claims and DIP Facility Liens; and no such costs or expenses shall be imposed or charged against the Lender or the Collateral pursuant to section 506(c) of the Bankruptcy Code.

5.    Fees and Expenses of the Lender.  The Lender waives its contractual and legal rights to the reimbursement of (a) all reasonable and documented out-of-pocket costs and expenses incurred by the Lender in connection with the investigation, development, preparation, negotiation, execution, interpretation or administration of, any modification of any term of or termination of, any DIP Loan Document, any other document prepared in connection therewith or the consummation and administration of any transaction contemplated therein, in each case including the attorneys' fees of the Lender and (b) all costs and expenses incurred in connection with (i) the creation, perfection and maintenance of the perfection of the Lender's DIP Facility Liens upon the Collateral, including Lien search, filing and recording fees, (ii) the enforcement or preservation of any right or remedy under any DIP Loan Document, any Secured Obligation, with respect to the Collateral or any other related right or remedy or any attempt to inspect, verify, protect, insure,

collect, sell, liquidate or otherwise dispose of any Collateral or (iii) the commencement, defense, conduct of, intervention in, or the taking of any other action (including preparation for and/or response to any subpoena or request for document production relating thereto) with respect to, any proceeding related to any Debtor, DIP Loan Document, Secured Obligation or the transactions contemplated by the Acquisition Agreement (collectively "Fees and Expenses").  <u>Provided, however</u>, for the avoidance of doubt, the foregoing shall not impair the Lender's rights to any bid protections approved by this Court in connection with serving as the Stalking Horse Bidder (as defined in the Sale Motion[4]).

6. <u>Automatic Perfection</u>.  With respect to the debt incurred by Debtors under the DIP Credit Agreement, this Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests in and liens upon the property of the estates of Debtors granted to Lender under the Interim Order and as set forth herein, without the necessity of filing, recording or serving any financing statements, or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action, including, without limitation, taking possession of or exercising control over any Collateral, to validate or perfect the security interests and liens granted to Lender in this Order and the DIP Loan Documents.  If Lender shall, in its discretion, elect for any reason to file any such financing statements or other documents with respect to such security interests and liens, the Debtors are authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon Lender's reasonable request and the filing, recording or service (as the case may

---

[4]   Motion of Debtors and Debtors-in-Possession with Respect to Sale of Assets for (I) an Order (A) Establishing Bidding Procedures Including, Without Limitation, Break-Up Fee Provisions and Other Bid Protections, (B) Approving Form of Asset Purchase Agreement, (C) Approving Form and Manner of Notice of Sale and Treatment of Executory Contracts and Unexpired Leases and (D) Scheduling Sale Hearing Date to Consider Final Approval of Sale and Assumption and Assignment of Executory Contracts and Unexpired Leases; (II) an Order Approving (A) the Sale, Free and Clear of Liens, Claims and Encumbrances and (B) Treatment of Executory Contracts and Unexpired Leases; and (III) Related Relief [D.I. 17].

be) of such financing statements or similar documents shall be deemed to have been made at the time of and on the Petition Date. Lender may, in its discretion, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which a Debtor has real or personal property and, in such event, the subject filing or recording officer is authorized to file or record such certified copy of this Order.

7. Preservation of Pre-Petition Liens. Notwithstanding anything to the contrary contained herein, any pre-petition secured lender's unavoidable liens and security interests in and against any assets of the Debtors shall continue in full force and effect to the extent existing on the date of the entry of the Interim Order and this Order, subject to all rights and defenses of the Debtors, their estates and the Creditors' Committee with respect thereto, and shall be and are unaffected by the DIP Credit Agreement, the Interim Order and this Order; provided, however, that the Primed Liens shall be primed by and subject to the first priority security interests and liens of the Lender under the DIP Credit Agreement. Any property of any Debtor that is encumbered by any lien or security interest that is avoided shall become subject to Lender's first priority lien; the Debtors and their estates expressly waive the benefits of section 551 of the Bankruptcy Code.

8. Further Acts by Debtor. Debtors are hereby authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements (in addition to the DIP Loan Documents) as Lender may reasonably require and as evidence of and for the protection of the Obligations and the Collateral or which may be otherwise deemed necessary by Lender to effectuate the terms and conditions of this Order and the DIP Loan Documents.

9. No Control of the Debtors. In negotiating and consummating the transactions authorized by this Order and the DIP Loan Documents, in determining to make the Loans under

the DIP Credit Agreement, or in exercising any rights or remedies as and when permitted pursuant to this Order, or the DIP Loan Documents, Lender shall not be deemed to be in control of the operations of the Debtors for any purpose, including to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute). Furthermore, nothing in this Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon Lender of any liability for any claims arising from the post-petition activities of the Debtors.

10.  Limited Modification of Automatic Stay. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified solely to implement the DIP Loan Documents and to the extent necessary to permit Lender to exercise, upon the occurrence and during the continuance of any Event of Default, any or all rights and remedies provided for in the DIP Loan Documents; provided, however, that prior to the exercise of any enforcement or liquidation remedies against the Collateral, the Lender shall be required to give three Business Days' written notice to the Debtors, their bankruptcy counsel, counsel to the Creditors' Committee (if a committee is appointed) and the U.S. Trustee. Notwithstanding the occurrence of an Event of Default or the Maturity Date, all of the rights, remedies, benefits, and protections provided to the Lender under the DIP Loan Documents and this Order shall survive the Maturity Date.

11.  Access to the Debtors. Without limiting the rights of access and information afforded the Lender under the DIP Loan Documents, the Debtors shall permit representatives, agents and/or employees of the Lender to have reasonable access to its knowledgeable personnel, premises and records during normal business hours (without unreasonable interference with the

proper operation of the Debtors' business) and shall cooperate, consult with, and provide to such representatives, agents and/or employees all such non-privileged information as they may reasonably request.

12. <u>Insurance Policies</u>.  Upon entry of the Interim Order and as ratified and approved under this Order, the Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtors which in any way relates to the Collateral.  The Debtors are authorized and directed to take any action necessary to have the Lender added as an additional insured and loss payee on each insurance policy.

13. <u>Survival of Provisions</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered dismissing the Chapter 11 Case, converting Debtors' Chapter 11 case to a Chapter 7 case, or any order which may be entered confirming or consummating any Chapter 11 plan, and the terms and provisions of this Order as well as the priorities in payment, liens, and security interests granted pursuant to this Order and the DIP Credit Agreement shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Order until all Obligations are indefeasibly satisfied and discharged; <u>provided, that</u>, at such time, all obligations and duties of the Lender to provide any loans and advances under this Order or the DIP Credit Agreement shall terminate immediately upon the earlier of the date of any Event of Default, the Maturity Date or the date that the Plan of Reorganization becomes effective unless Lender has given its express prior written consent thereto.  For the avoidance of doubt, such consent shall not be implied from any other action, inaction or acquiescence by Lender.

14. <u>Resolution of Any Conflicting Terms</u>.  To the extent the terms and conditions of the

DIP Loan Documents are in conflict with the terms and conditions of this Order, the terms and conditions of this Order shall control.

15. <u>Order Binding on Successors</u>.  The provisions of this Order shall be binding upon and inure to the benefit of the Lender, the Debtors, and their respective successors and assigns (including any trustee or other estate representative appointed or elected as a representative of the Debtors' estates, whether the bankruptcy case is a proceeding under chapter 11 or chapter 7 of the Bankruptcy Code, or of any estate in any successor case).  Except as otherwise explicitly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Credit Agreement.

16. <u>Effect of Debtors' Stipulations on Third Parties</u>.

(i) <u>Binding on Debtors</u>.  Except as otherwise limited by this Order, the Debtors' stipulations, admissions, and agreements contained in this Order, including, without limitation, in Paragraph D of this Order, shall be binding upon the Debtors in all circumstances and for all purposes.

(ii) <u>Binding on Third Parties</u>.  The Debtors' stipulations, admissions, and agreements contained in this Order, including, without limitation, in Paragraph D of this Order, shall be binding upon their estates and all other parties-in-interest, including, without limitation, any statutory or non-statutory committees appointed or formed in this Chapter 11 Case including the Creditors' Committee and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtors, in all circumstances and for all purposes, unless the criteria under subparagraphs 16(ii)(a), (b), and (c) below are satisfied.

a. <u>Challenge Period</u>. Such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so, a "Challenge Party"), in each case, with requisite standing granted by the Court (which motion for such standing may be filed concurrently with the adversary proceeding or contested matter), has timely filed an adversary proceeding or contested matter by no later than a date that is, consistent with Local Rule 4001-2(a)(i)(B), (x) 75 days after entry of this Order for all parties in interest other than the Creditors' Committee, and 60 days after appointment of the Creditors' Committee for such Creditors' Committee; and (y) any such later date as has been ordered by the Court for good cause shown upon a motion filed and served within any applicable period of time set forth in this Paragraph 16 (the "Challenge Period"); <u>provided</u>, <u>however</u>, that if the Creditors' Committee files a motion seeking standing on or prior to 60 days after its appointment, the Challenge Period for the Creditors' Committee shall be tolled through the date that is three (3) Business Days after this Court enters a ruling on such motion solely with respect to any challenge specifically identified in such motion (including any proposed complaint or pleading attached thereto); <u>provided</u>, <u>further</u>, that if this Chapter 11 Case converts to chapter 7 cases, or if a chapter 11 trustee is appointed, prior to the end of the Challenge Period, any chapter 7 or chapter 11 trustee shall have the benefit of any remaining portion of the Challenge Period.

b. <u>Challenge Proceeding</u>.  Such adversary proceeding or contested matter (A) objects to or challenges the amount, validity, perfection, enforceability, priority

or extent of the Primed Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "Challenge Proceeding") against the holder of the Primed Liens, or its subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "Representative" and, collectively, the "Representatives") in connection with matters related to the Primed Liens.

c. Final Non-Appealable Order. A final non-appealable order is entered in favor of the plaintiff in any such Challenge Proceeding; provided that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred; and provided further, that nothing contained herein shall preclude or otherwise limit the rights of the Creditors' Committee or any party to seek to intervene, or to appear and be heard under 11 U.S.C. § 1109(b).

17. Subsequent Reversal. If any or all of the provisions of this Order or the DIP Credit Agreement are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the Lender: (i) such modification, vacatur, amendment, or stay shall not affect the validity of any Obligation to the Lender that is or was incurred prior to

the effective date of such modification, vacatur, amendment, or stay (the "Modification Date"), or the DIP Facility Superpriority Claims and DIP Facility Liens authorized or created by this Order and the DIP Loan Documents; (ii) the Obligations that were incurred by the Debtors prior to the Modification Date shall be governed in all respects by the original provisions of this Order and the DIP Loan Documents, and (iii) the validity of any Obligations and the DIP Facility Superpriority Claims and DIP Facility Liens is and shall be protected by sections 364(e) of the Bankruptcy Code.

18. <u>Order Effective Immediately; Retention of Jurisdiction</u>. This Order shall be effective immediately upon entry by the Court, and any stay of the effectiveness of this Order is hereby waived. This Court has and will retain jurisdiction to enforce any terms of, and resolve any issues and disputes raised with respect to, this Order.

Dated: April 4, 2019
Wilmington, Delaware

The Honorable Christopher S. Sontchi
Chief United States Bankruptcy Judge

{00025418. }                            16