**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MABVAX THERAPEUTICS | ) | Case No. 19-10603 (JTD) |
| HOLDINGS, INC., *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Reorganized Debtors. | ) | **Re:  D.I. Nos. 483 & 538** |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter began with a motion filed by preferred stockholders Ben Brauser, Dan Brauser, Greg Brauser, and Josh Brauser (collectively "**Movants**") for entry of an order removing the Plan Administrator for the Second Amended Combined Disclosure Statement and Joint Plan of Liquidation for Debtors ("**Motion to Remove**" or "**Complaint**").[1]  In response, the Plan Administrator filed a motion to enforce the confirmation order and dismiss the Motion to Remove (the "**Motion to Dismiss**").[2]  Both motions were briefed, and oral argument was held on each.[3]  For the reasons set forth below, both motions are denied.

## BACKGROUND

This case presents the unusual situation in which equity holders who were, pursuant to the Plan, expected to get nothing, are now, several years post-confirmation, likely to recover. This welcome development, however, comes with some complications.

---

[1]  D.I. 483, Motion to Remove Plan Administrator.  As I indicated in a previous ruling, I am treating the Motion to Remove as a complaint because it seeks equitable relief which can only be obtained through an adversary proceeding.  See D.I. 551 at 12 (Bench Ruling on Jurisdiction).
[2]  D.I. 538, Motion for Order (I) Enforcing Plan's Exculpation and Injunction Provisions and Dismissing Movants' Motion to Remove; and (II) Awarding Costs and Attorneys' Fees.
[3]  See D.I. 484 (Objection to Motion to Remove); D.I. 544 (Objection to Motion to Dismiss); D.I. 545 (Reply); D.I. 551 (Transcript of 3/8/23 Hearing); D.I. 559 (Transcript of 5/4/23 Hearing).

Pursuant to the plan and confirmation order,[4] J. David Hansen ("**Hansen**"), the sole director of the debtors ("**Debtors**" or "**MabVax**"), was appointed as the plan administrator ("**Plan Administrator**").  The Plan provided that all equity interests would be extinguished, and owners would receive no distribution unless the Plan Administrator received, over time, enough cash to pay general unsecured creditors in full.

Among his other duties as Plan Administrator, Hansen is responsible for continuing the prosecution of a civil action commenced by Debtors in 2019 against several of their preferred shareholders in a matter captioned *MabVax Therapeutics Holdings, Inc. v. Honig, et al.,* Case no. 37-2019-00018398-CU-SL-CTL, pending in the Superior Court for the State of California (the "**California Litigation**").  Defendants have filed a cross-complaint in that action against Hansen in his personal capacity.  The Plan and Confirmation Order include provisions that prohibit distributions to any defendants in the California Litigation against whom judgment is entered.  Movants are not named as defendants, but their father is.  Movants hold both common and preferred shares of the Debtors.  Hansen holds common shares, and his payment position is therefore subordinate to Movants.[5]

Debtors have settled with several defendants in the California Litigation, resulting in more than $12 million in proceeds to date.[6]  On May 26, 2022, the Court entered an order directing final payments be made to general unsecured creditors.[7]  Accordingly, any additional amounts received will now flow to subordinated claims, intercompany claims, and equity.

---

[4]  Second Amended Combined Disclosure Statement and Joint Plan of Liquidation (the "**Plan**"), D.I. 289; Findings of Fact, Conclusions of Law, and Order Approving and Confirming the Second Amended Combined Disclosure Statement and Joint Plan of Liquidation for Debtors ("**Confirmation Order**"), D.I. 327.

[5] Motion to Remove at 7.

[6] D.I. 441, 445.

[7] D.I. 459.

The possibility of an equity payout has given rise to Movants' concerns regarding the appropriateness of Hansen's continued role as the Plan Administrator. Specifically, they suggest that the Plan Administrator's status as shareholder creates a conflict of interest with other interest holders, particularly preferred shareholders. For that reason, they ask the Court to appoint a new Plan Administrator who is "completely disinterested, and capable of discharging fiduciary duties to all creditors and equity holders."

## JURISDICTION AND VENUE

The Court has subject matter jurisdiction over adversary proceedings pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## LEGAL STANDARDS[8]

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7012, serves to test the sufficiency of the complaint, and a court's role is to determine whether the plaintiff is entitled to offer evidence in support of its claims. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000); *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 407 (D. Del. 2007) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)). To survive a motion to dismiss, a plaintiff must allege well-pleaded facts with sufficient detail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[8] Movants argue that the Motion to Remove is not an adversary proceeding and suggest that the Plan Administrator failed to cite authority for moving to dismiss the Motion to Remove. Objection, D.I. 544 at 7. As I explained in my bench ruling regarding jurisdiction, because Movants seek equitable relief, this matter should have been brought as an adversary proceeding rather than a motion creating a contested matter. D.I. 551 at 11-12; Federal Rules of Bankruptcy Procedure 7001(7). Rather than dismiss it outright, I informed the parties that for purposes of efficiency I will treat the Motion to Remove as a Complaint. While the Plan Administrator's subsequent motion does not address the applicable standards, it is most appropriately interpreted as a motion to dismiss made pursuant to Rule 12(b)(6).

*Twombly*, 550 U.S. 544, 570 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Under this standard, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions." *Iqbal*, 556 U.S. at 678.   The Third Circuit has adopted a two-part analysis

that courts must employ when deciding a motion to dismiss for failure to state a claim.

*Fowler*, 578 F.3d at 210.   "First, the factual and legal elements of a claim should be separated"

with the reviewing court accepting "all of the complaint's well-pleaded facts as true, but . . .

disregard[ing] any legal conclusions."  *Id*. at 210-11.   Next, the reviewing court must

"determine whether the facts alleged in the complaint are sufficient to show that the plaintiff

has a 'plausible claim for relief.'"   *Id*.; *Gellert v. Coltec Indus., Inc. (In re Crucible*

*Materials Corp.)*, 2012 WL 5360945, at *3 (Bankr. D. Del. Oct. 31, 2012).

## DISCUSSION

### I.    Applicability of the Exculpation and Injunction Provisions

The Plan Administrator argues that both the Plan and the Confirmation Order operate to

enjoin the Movants from prosecuting their Motion to Remove because they contain expansive

injunction and exculpation provisions.   The injunction provision states:

> Except as otherwise expressly provided for in the Plan or in obligations
> issued pursuant to the Plan, all Entities[9] are permanently enjoined, on and after the
> Effective Date, on account of any Claim or Equity Interest, from:
>
> > **Commencing** or continuing **in any manner any action or**
> > **other proceeding of any kind against** any of the Debtors, the
> > Post-Effective Date Debtors, **the Plan Administrator**, their

---

[9] [17] The term "Entity" has the meaning set forth in Section 101(15) of the Bankruptcy Code.  *See*
*Second Amended Combined Disclosure Statement and Joint Plan of Liquidation for Debtors* (the
"Plan") at § 1.48.  Pursuant to 11 U.S.C. 101(15), the term "entity" includes "person." The Movants are
Entities as defined by the Plan.

successors and assigns, and any of their assets and properties; . . . .[10]

The exculpation provision states:

> The Plan Administrator . . . shall be deemed exculpated and indemnified, and **shall not incur any liability** to any entity for any act or omission in connection with or related to the administration of the Post-Effective Date Debtors or the Plan except if the Bankruptcy Court determines by Final Order that the act or omission constitutes a crime, fraud, willful misconduct, or gross negligence. To the fullest extent permitted under applicable law, the Post- Effective Date Debtors indemnify the Plan Administrator against any liabilities arising directly or indirectly from acts or omissions related to the administration of the Post-Effective Date Debtors or the Plan other than an act or omission found by Final Order of the Bankruptcy Court to constitute a crime, willful misconduct, or gross negligence. Any indemnity owing to the Plan Administrator is to be paid as an expense of Plan administration from Available Cash.[11]

Movants counter that these provisions are not triggered by their Motion, which does not seek a determination of liability against the Plan Administrator or seek recovery from either him or the Reorganized Debtors. I agree.

The Plan Administrator's proposed reading of these provisions is far too broad. Given that neither the Plan nor the Confirmation Order includes standards applicable to the Plan Administrator's removal, his proposed interpretation of these provisions would effectively prevent any oversight. The Motion is not seeking to hold the Plan Administrator liable for anything. Instead, the Motion seeks to have him replaced. While the relief they seek includes a request that the new plan administrator investigate a payment made on the Plan Administrator's proof of claim, to the extent such an investigation eventually gave rise to an obligation to repay the distribution, such "liability" would be the result of claims asserted by the new plan

---

[10] Plan at 59 (Art. XIV, § D) (**emphasis** added). See also Confirmation Order provides that, "all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against or in the name of any of the Estates, the Plan Administrator …." Confirmation Order at ¶ 20.
[11] Plan at 47 (Art. VIII, § G) (emphasis added).

administrator, not the Movants.  For these reasons, the exculpation and injunction provisions contained in the Plan and Confirmation Order do not preclude the Motion to Remove.

## II.    Res Judicata

The Plan Administrator next argues that Movants' claims are precluded by the doctrine of res judicata.  Specifically, he argues that objections to Mr. Hansen's appointment as Plan Administrator were made at confirmation and because those objections were overruled Movants cannot raise them again now.  I disagree.

I do not view the Motion to Remove as making a claim that Mr. Hansen should never have been appointed as Plan Administrator.  Rather it asserts that circumstances have changed since his appointment such that it is no longer appropriate for Mr. Hansen to hold the position. The doctrine of res judicata is therefore inapplicable here.

## III.    Failure to State a Claim

Because it was filed as a motion, the Complaint does not set forth individual claims as formal causes of action.  Accordingly, while the relief that Movants are seeking is clearly set forth, the basis for that relief is not.   I have nevertheless discerned the following claims that Movants argue each serve as a basis for removal: 1) violation of the Bankruptcy Code; 2) breach of fiduciary duty; and 3) failure to comply with the Plan.  I will address each in turn.

### A.  Violation of the Bankruptcy Code

Movants argue that the Plan Administrator should be removed because his status as common shareholder renders him both disinterested and conflicted.  Specifically, they argue that the Plan Administrator, as the holder of common shares, has an interest in the assets of the estates and an inherent conflict of interest with other interest holders, namely preferred shareholders.

1.  Disinterestedness

Movants contend that the Plan Administrator should be subject to the disinterested

requirements that the Bankruptcy Code (the "**Code**") imposes on a debtor's professionals during

the pendency of a bankruptcy case, or a trustee appointed by the Court.  See 11 U.S.C. §§ 324,

327, 328.  Movants have cited to no authority that supports their position that a post-

confirmation plan administrator must be disinterested.[12]   A post-confirmation plan administrator

is not appointed pursuant to Sections 324, 327, or 328.  Like a liquidating trustee, a plan

administrator is appointed pursuant to Section 1123 and is a "representative of the estate." 11

U.S.C. § 1123(b)(3)(B); *In re Health Diagnostic Lab., Inc.*, 584 B.R. 525, 532-33 (Bankr. E.D.

Va. 2018).  Section 1123 mentions nothing about such a representative being disinterested and

given the inclusion of such a requirement elsewhere in the Code, I must assume its absence here

was intentional.  *See Grigas v. Sallie Mae Servicing Corp. (In re Grigas)*, 252 B.R. 866, 872

(Bankr. D.N.H. 2000) ("It is a fundamental tenet of statutory interpretation that where Congress

has failed to include language in statutes, it is presumed to be intentional when the phrase is used

elsewhere in the Code.") (internal quotations omitted).

Additionally, requiring the post-confirmation estate representative to be disinterested

would make little sense.  As the Court explained in *Health Diagnostic Lab,*

> [c]reditors often find that it is beneficial to have a person with knowledge and
> familiarity of the debtor's business serve as the liquidating trustee in order to
> efficiently wind down the debtor's business and liquidate the estate for their
> ultimate benefit. Imposition of a "disinterested person" standard is an unnecessary

---

[12]   Movants cite only to cases discussing the employment of officers during the pendency of a bankruptcy
case.  Additionally, none of the cases Movants rely upon impose a disinterested requirement.  In fact, one
even clearly states that Section 327 could only apply to officers without the disinterestedness requirement.
See, e.g., *In re Zerodec Mega Corp.,* 39 B.R. 932, 934 (Bankr. E.D. Pa. 1984) ("excluding the
bar on disinterestedness, in chapter 11 cases the employment of officers by the debtor in
possession is governed by § 327(a).") (emphasis added).

constraint. Its application may eliminate the most capable and the most desirable
individuals from participating as liquidating trustee simply due to "insider" status.

584 B.R. 525, 532-33.  Accordingly, I find the Plan Administrator is not required to be

disinterested.

### 2. Failure to Disclose

Movants next suggest that the Plan Administrator should be subject to the disclosure

requirements that the Code imposes on estate professionals.  See 11 U.S.C. §§ 327, 328.  They

argue that applying these requirements to the Plan Administrator would necessitate his removal

because the Plan Administrator failed to disclose that he is a common shareholder, a fact that

renders him "necessarily adverse" to the preferred shareholders.  Again, I disagree.

Movants offer no authority, and I am aware of none, for the proposition that the Code's

disclosure requirements should apply to a post-confirmation plan administrator.[13]  But even

assuming those requirements did apply here, the disclosure of the Plan Administrator's status as

common shareholder would not have resulted in the Plan Administrator's disqualification.  At

confirmation, when the Plan Administrator was appointed, equity holders were not expected to

recover anything and so any conflict created by his shareholder status was, at best, potential.

Given that fact, had the issue been raised at confirmation, I would have exercised my discretion

to allow the appointment.  *See In re Marvel Entm't Grp.*, 140 F.3d 463, 476 (3d Cir. 1998) ("the

district court may within its discretion . . .disqualify an attorney who has a potential conflict of

interest and . . . may not disqualify an attorney on the appearance of conflict alone.").

---

[13]  *See In re B.E.S. Concrete Prods., Inc.,* 93 B.R. 228, 236 (Bankr.E.D.Ca.1988) (application of
disclosure requirements to debtor's special counsel); *In re eToys, Inc.*, 331 B.R. 176
(Bankr.D.Del. 2005) (applying disclosure requirement to debtor's counsel and declining to apply
Section 327(a) to officer of the debtor).

8

Even now, when it is likely that shareholders will recover, any conflict still does not rise above the "potential" level.  As Judge Walrath observed in *In re eToys*, in a liquidation case "the interest of the Debtors and the creditors is the same: to realize the maximum recovery from the Debtors' assets."  *In re eToys, Inc.*, 331 B.R. 176, 199 (Bankr. D. Del. 2005).  Movants have not alleged facts here that would support the conclusion that the interests of the Plan Administrator and the creditors are not fully aligned.  They have only alleged that the Plan Administrator is not acting in accordance with their personal interests.  That is not enough.[14]

While it is certainly unusual that distributions to certain preferred shareholders (defendants in the California Litigation) depend on the outcome of litigation being prosecuted by a plan administrator who is also a common shareholder, Movants have not alleged any facts that would support the conclusion that the Plan Administrator's actions with respect to that lawsuit have not, to date, benefited creditors.  On the contrary, if not for the settlements already achieved in the California Litigation, equity holders would have no hope of recovering at all.  For these reasons, I find that, at this time, the Plan Administrator does not have a conflict of interest that warrants his removal.

### B.  Breach of Fiduciary Duty

Movants next attempt to assert that the Plan Administrator has breached his fiduciary duty of loyalty.  "The duty of loyalty stands for the principle that 'the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director,

---

[14] The Plan Administrator's status as a defendant in a cross-complaint filed in the California Litigation does not change this conclusion for two reasons.  First, the animosity among those involved in both this matter and the California Litigation is so pervasive that it is reasonable to conclude that the cross-complaint was filed with the intention of creating the alleged disabling conflict here.  Second, and completely independent from the first point, the cross-complaint has been bifurcated from the primary complaint and will not be tried until after the primary action is resolved.  Accordingly, it is unclear how Movants believe that action impacts the Plan Administrator's ability to perform his duties in this case, which may very well conclude before any litigation on the cross-complaint begins.

officer or controlling shareholder.'" *Nystrom v. Vuppuluri (In re Essar Steel Minn. LLC)*, Nos. 16-11626 (BLS), 17- 50001, 2019 Bankr. LEXIS 1622, at *17-18 (Bankr. D. Del. May 23, 2019) (quoting *In re Fedders N. Am., Inc.*, 405 B.R. 527, 540 (Bankr. D. Del. 2009)). "[C]laims for breach of the duty of loyalty are notably—and intentionally—difficult claims to assert." *Id.* at *17-18. "To establish a breach of the fiduciary duty of loyalty, plaintiffs must show that the defendants either (1) stood on both sides of the transaction and dictated its terms in a self-dealing way, or (2) received in the transaction a personal benefit that was not enjoyed by the shareholders generally." *In re Coca-Cola Enters.*, 2007 Del. Ch. LEXIS 147, at *12 (Del. Ch. Oct. 17, 2007) (citations omitted).

Movants argue that the Plan Administrator's loyalties are divided due to his status as both shareholder and distribution agent.[15] Movants suggest that while there is enough money now to simply end the California Litigation and pay the preferred shareholders with the proceeds, the Plan Administrator is continuing to prosecute the case for the sole purposes of ensuring that he recovers as much as possible in his capacity as common shareholder. Specifically, Movants argue that "it is clear that the continued prosecution of the California Litigation by Hansen is not fair to other claimants, and Hansen should be removed from his position of power as Plan Administrator."[16]

---

[15] To the extent Movants are asserting, either alternatively or additionally, that the payment of Mr. Hansen's proof of claim constitutes a breach of the duty of loyalty, that claim would also fail. Movants have not alleged sufficient facts to establish the payment was improper for any reason other than that it belonged to Mr. Hansen. Given that the docket entries reflect that applicable Bankruptcy Code provisions were satisfied and the proper procedures for payment of a proof of claim were followed, (see, e.g., D.I. 309, 459) that is not enough.

[16] Motion to Remove at 8.

Movants have failed to allege sufficient facts to support the conclusion that the Plan Administrator's actions with respect to the California Litigation constitute self-dealing. For example, Movants do not allege: 1) that the California Litigation is not beneficial to the creditors as a whole; 2) that the Plan Administrator has made any decisions with respect to the California Litigation that would result in a benefit to him that is distinct from the benefit received by all shareholders; or 3) that any benefit to the Plan Administrator would be material.

Additionally, Movants' argument on this issue simply makes no sense. As they concede, the Plan Administrator owes fiduciary duties to all creditors, not just the preferred shareholders.[17] If the Plan Administrator were to do as Movants suggest and settle the California Litigation with only enough money to pay out the preferred shareholders, that might very well constitute a breach of fiduciary duty to the common shareholders. Movants' argument that the continued prosecution of the California Litigation will only enrich the Plan Administrator and other similar equity holders "to the detriment of the Debtors and other equity holders," misconstrues the facts. If prosecution of the California Litigation is to the detriment of certain equity holders it is only because they are defendants in that action. As is evident from settlement proceeds collected so far (and the fact that previously out of the money equity holders now stand to get paid), pursuing claims against those individuals has been and continues to be in the best interest of all of the other creditors.

For these reasons, I find that Movants have not pled facts sufficient to state a claim for breach of the duty of loyalty.

---

[17] Motion to Remove at 7 ("The Plan Administrator is a fiduciary to *all* creditors of the Debtors in connection with the Plan.").

### C. Failure to Comply with Plan Provisions

Finally, Movants suggest that the Plan Administrator should be removed for failing to comply with the Plan.  Specifically, they argue that the Plan requires that the Administrator file a motion for establishing procedures for equity distribution now that general unsecured claimants have been paid and that he has refused to do so.

The Plan provision on which the Movants rely states:

> "[o]n the Effective Date, all Equity Interests shall be extinguished, and owners thereof shall receive no Distribution on account of such Equity Interests. Equity Interest shall be non-transferable from and after the Effective Date; provided, however, if the Plan Administrator receives over time sufficient Available Cash to achieve the class 4 [General Unsecured Claims] Satisfaction, a procedure motion will be filed to make Distributions to junior classes."[18]

While I agree that this provision does require the Plan Administrator to file a procedure motion at some point after the general unsecured claims have been paid, it does not set forth a specific date by which that must occur.  In the absence of a stated time frame, the Plan Administrator has discretion in deciding when to file a procedures motion.  Practically speaking, given that any distributions would not likely be made until the assets have been fully liquidated, it makes sense to wait until that time to begin the distribution process.  Accordingly, I find that the Motion to Remove fails to allege facts sufficient to justify the removal of the Plan Administrator for failure to comply with the Plan.

For the reasons set forth above, the Motions are DENIED.

SO ORDERED.

Dated:  June 15, 2023

JOHN T. DORSEY, U.S.B.J.

---

[18] Plan at 16.