## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MABVAX THERAPEUTICS HOLDINGS, INC., *et al.*,[1] | Case No. 19-10603 (LSS) |
| Debtors. | Jointly Administered |
| | **Hearing Date: 12/11/25 at 10:00 a.m. (ET)**<br>**Obj. Deadline: 12/01/25 at 4:00 p.m. (ET)** |

**MOTION OF PLAN ADMINISTRATOR FOR ENTRY OF AN ORDER AND FINAL DECREE: (I) AUTHORIZING AND APPROVING FINAL DISTRIBUTIONS TO HOLDERS OF ALLOWED PROOFS OF INTEREST; (II) AUTHORIZING ABANDONMENT AND DESTRUCTION OF DEBTORS' REMAINING BOOKS AND RECORDS; (III) TERMINATING NOTICING SERVICES; (IV) APPROVING THE DISCHARGE OF PLAN ADMINISTRATOR AND COUNSEL; (V) CLOSING THE CHAPTER 11 CASES; (VI) APPROVING FORM AND MANNER OF NOTICE OF THIS MOTION AND (VII) GRANTING RELATED RELIEF**

J. David Hansen, in his capacity as plan administrator ("**Plan Administrator**") for the Post-Effective Date Debtors (together, "**Mabvax**" or "**Debtors**") in the above-captioned cases ("**Chapter 11 Cases**"), hereby submits this motion (the "**Motion**"), pursuant to sections 105(a), 350(a), 554(a) and 1142(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 3021, 3022 and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3022-1 of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"): (i) authorizing and approving final distributions to holders of Allowed proofs of interest; (ii) authorizing abandonment and destruction of Debtors' remaining books and records; (iii) terminating

---

[1]The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) MabVax Therapeutics Holdings, Inc. (7903) and (ii) MabVax Therapeutics, Inc. (1765). The Debtors' mailing address is P.O. Box 1519, Clinton, AR 72031 c/o David Hansen.

4910-7975-6894, v. 3

Noticing Services; (iv) granting the discharge of Plan Administrator and counsel; (v) closing the Chapter 11 Cases; (vi) approving the form and manner of notice of this Motion; and (vii) granting related relief. In support of this Motion, the Plan Administrator respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012, and Article XV of the *Second Amended Disclosure Statement and Joint Plan of Liquidation for Debtors* [D.I. 289].

2.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Pursuant to Local Rule 9013-1(f), Plan Administrator consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent such consent.

3.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal predicates for the relief sought herein are sections 105(a), 350(a), 554(b) and 1142(b) of the Bankruptcy Code, Bankruptcy Rules 3021 and 3022, and Local Rule 3022-1.

## RELEVANT BACKGROUND

5.      On March 21, 2019 (the "**Petition Date**"), the Debtors filed with this Court their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' bankruptcy cases were jointly administered pursuant to Bankruptcy Rule 1015(b). When the Debtors filed their cases, the prospect of a meaningful return to general unsecured creditors, or any return to Interest Holders, was remote at best.

A.    **The Alleged Bad Actor Litigation**

6.    The factual background regarding the Debtors, including their historical business operations and the events precipitating these Chapter 11 Cases, is set forth in detail in the Declaration of J. David Hansen in Support of Debtors' Chapter 11 Petitions and First Day Motions [D.I. 10] (the "**First Day Affidavit**"). The First Day Affidavit describes potential causes of action against certain investors that the Debtors were preparing to commence, known as the Alleged Bad Actor Litigation. *See* First Day Affidavit at ¶ 39.

7.    Post-petition, the Court authorized the retention of Baker Botts L.L.P. to commence and prosecute the Alleged Bad Actor Litigation against certain former MabVax investors for, *inter alia*, alleged fraud, misrepresentation, unlawful business practices, breach of fiduciary duty, tortious interference, and unjust enrichment.  The Alleged Bad Actor Litigation was commenced post-petition on April 8, 2019, in the California Superior Court for the County of San Diego in an action styled *MabVax Therapeutics Holdings, Inc. v. Honig, et al.*, Case No. 19-cv-981-WQH-MSB.

B.    **The Sale of Substantially All of the Debtors' Assets and Confirmation of a Plan of Liquidation.**

8.    On May 7, 2019, the Court entered an order [D.I. 141] approving the sale of substantially all of the Debtors' assets to BioNTech AG. Post-sale, the Debtors continued to store certain laboratory records for BioNTech.

9.    On August 14, 2019, the Debtors filed the Motion of the Debtors for Entry of an Order (I) Establishing Bar Dates and Procedures and (II) Approving the Form and Manner of Notice Thereof (the "**Bar Date Motion**") [D.I. 205]. On August 27, 2019, this Court entered an order granting the Bar Date Motion (the "**Claims Holder Bar Date Order**") [D.I. 214]. The Claims Holder Bar Date Order excluded proofs of interest by Interest Holders.

4910-7975-6894, v. 3

10.     On March 5, 2020, the Court entered an order [D.I. 327] (the "**Confirmation Order**") confirming the Second Amended Combined Disclosure Statement and Joint Plan of Liquidation for Debtors [D.I. 289] (as amended or supplemented, the "**Plan**"). The Plan became effective on March 20, 2020 [D.I. 328] (the "**Effective Date**").

      C.     **Appointment of Plan Administrator and Post-Effective Date Distributions to Unsecured Creditors in Full with Interest.**

11.     Upon the occurrence of the Effective Date, the Plan Administrator was tasked with and authorized to liquidate and monetize the Retained Causes of Action (including the Alleged Bad Actor Litigation) and make distributions when feasible, in accordance with the priorities of the Bankruptcy Code.  To achieve that goal, the Plan vested the right to continue to prosecute the Retained Causes of Action in the Plan Administrator, which he thereafter prosecuted.  *See* Plan at Sections II.1.95 and VIII.M. Post-Effective Date, the Plan Administrator achieved litigation settlements over time with various subsets of the Alleged Bad Actors and others resulting in settlement funds (the "**Settlement Funds**") available for distribution.

12.     Pursuant to the Plan, the Plan Administrator paid all holders of priority non-tax claims in full and thereafter, over time, paid all allowed general unsecured creditors in full with interest. That left only distributions to Interest Holders, if possible.  Eventually, the last group of Alleged Bad Actors settled, and the settlement achieved was sufficient to make a distribution to Interest Holders.

      D.     **The Proof of Interest Bar Date.**

13.     Toward that end, on March 31, 2025, the Plan Administrator filed *the Motion by Plan Administrator for an Order (a) Setting the Proof of Interest Bar Date; (b) Approving the Proof of Interest Form and Related Instructions for Filing Proofs of Interest; (c) Approving the Adequacy and Sufficiency of Providing Actual and Constructive Notice to All Interest Holders of*

*the Proof of Interest Bar Date; (d) Disallowing Notice of the Bar Date Package and Distributions to Certain Excluded Parties; (e) Authorizing the Employment and Retention of Stretto, Inc. as Noticing Agent to Implement the Equity Distribution; and (f) Granting Related Relief* [D.I. 657] ("**Motion for an Interest Holder Bar Date**").  The Motion for an Interest Holder Bar Date sought an order from the Bankruptcy Court that required all existing shareholders of MabVax seeking a distribution from the estate to submit poofs of interest ("**POI**") by a date certain that contained certain basic information demonstrating entitlement to receive a distribution; *e.g.*, that such shareholder was an Interest Holder on the Record Date set by the Plan, did not thereafter sell or otherwise dispose of the shares, and remain a current shareholder.

14.     In connection with noticing the Proof of Interest Bar Date, and providing other related services, the Plan Administrator retained Stretto, Inc. (the "**Noticing Agent**" or "**Stretto**") as part of the Proof of Interest Bar Date Order (defined below).

15.     On May 5, 2025, the Court entered the *Order Approving Equity Distribution Procedures and Granting Related Relief* [D.I. 665] (the "**Proof of Interest Bar Date Order**").  Among other things, the Court established the deadline for filing proofs of interest as July 7, 2025, at 5:00 p.m. (the "**Proof of Interest Bar Date**") and authorized the Noticing Agent to: (a) maintain a register of Proofs of Interests; (b) establish and maintain a website to aid Interest Holders in filing Proofs of Interest; (c) provide a live call center support for Interest Holders; and (d) provide administration services for the filed Proofs of Interest (the "**Noticing Services**").  Stretto noticed the Proof of Interest Bar Date on all known holders of common shares, all holders of preferred shares and holders of unexercised warrants.  *See Affidavit/Declaration of Service re: Notice of Deadline for Filing Proofs of Interest, Proof of Interest Form, and General*

*Instructions for Preparing and Filing a Proof of Interest* [D.I. 668]. In addition, Stretto caused

notice of the Proof of Interest Bar Date to be published in the Wall Street Journal. *See* D.I. 717.

     **E.**        **The Plan Administrator's Objections to certain Proofs of Interest.**

     16.       In response to noticing the Proof of Interest Bar Date, Stretto received one

hundred and forty-five (145) proofs of interest representing a total of approximately 2,315,707

shares of common stock as of August 5, 2025. No proofs of interest were filed by holders of

either preferred shares or warrants.  Ninety-one (91) of the filed proofs of interest were deficient

in some manner and/or otherwise objectionable (the "**Deficient POIs**").  Thereafter, the Plan

Administrator, through counsel, worked cooperatively with shareholders with Deficient POIs to

cure their deficiencies identified where possible; *e.g.*, assistance with providing or filling out a

w-9 form, finding sufficient evidence of current ownership.  To move the vetting of Deficient

POIs process forward, and address certain fundamentally uncurable Deficient POIs, the Plan

Administrator, on August 5, 2025, filed the *Plan Administrator's Omnibus (Non-Substantive)*

*Objections to Proofs of Interest* [D.I. 676] (the "**Initial Objection**").

     17.       On September 4, 2025, the Court held a hearing on the Initial Objection and

sustained in part[2] and overruled in part the Initial Objection.  Specifically, the Court overruled,

among others, the objection to the late-filed Deficient POIs but permitted the Plan Administrator

to further object to such Deficient POIs on other bases.

     18.       Thereafter, the Plan Administrator further reviewed Deficient POIs and, through

counsel, made further informal attempts to resolve such deficiencies.  When those efforts were

unsuccessful, on September 23, 2025, the Plan Administrator filed his *Supplemental Omnibus*

*Objection to Proofs of Interest* [D.I. 703] (the "**Supplemental Objection**").  On October 23

---

[2] On September 22, 2025, the Court entered an Order [D.I. 702] sustaining sixty-five (65) of the Plan
Administrator's objections to Deficient POIs set forth in the Initial Objection.

4910-7975-6894, v. 3

2025, the Court held a hearing and entered an Order [D.I. 716] sustaining the Supplemental Objection.  The entry of the second order completed the Plan Administrator's review and objections to Deficient POIs.

### F.    The Allowed POIs

19.    As a result of the vetting and Objection process, and the denial in part by the Court of the Initial Objection, eighty-six (86) filed POIs representing 2,086,673 shares of common stock, are now Allowed, and therefore eligible to receive a distribution with respect to the allowed shares they hold (the "**Allowed POIs**").  The schedule setting forth the total distribution for the Allowed POIs (the "**Final Distribution**") is attached as **Exhibit 1** to the Proposed Order (the "**Final Distribution Schedule**").

### G.    Abandonment of the Post-Effective Date Debtors Remaining Books and Records

20.    The Debtors accumulated many business records in the ordinary course of operating their business, including, but not limited to, documents concerning their research and development activities such as litigation and related legal records, corporate organizational and financial documents, federal and state documents, correspondence, current and historical vendor invoices, court documents, bankruptcy filings, tax filings, creditor claims and payments, POI records and payments, personnel and payroll records, insurance records including D&O policies, transaction records of sale to BioNTech.  The Plan Administrator also kept copious notes concerning the administration, prosecution and mediation of the Retained Causes of Action (the "**Books and Records**").  Although certain Books and Records were maintained post-sale at the request of BioNTech, BioNTech has indicated that at the closing of the Estate it wants such materials transferred to its storage facility.  The Books and Records are being stored by the Plan

4910-7975-6894, v. 3

Administrator at Iron Mountain and at the Plan Administrator's personal office.[3]

21.     The Plan Administrator has reviewed the Books and Records and determined that they no longer have any value or utility to the administration of the Debtors' Post-Effective Date Estates.   It also costs the Post-Effective Date estates approximately \$271/month to store the Books and Records.   The Post-Effective Date Estates have been fully administered, and the final distribution to Allowed POIs is soon to be completed.   To eliminate recurring and unnecessary storage fees, the Plan Administrator seeks permission to abandon and/or destroy all Books and Records.

## RELIEF REQUESTED

22.     By this Motion, the Plan Administrator requests entry of an order, pursuant to sections 105(a), 350(a), 554(a) and 1142(b) of the Bankruptcy Code, Rules 3021, 3022 and 6007 of the Bankruptcy Rules, and Rule 3022-1 of the Local Rules: (i) authorizing and approving the final distributions to holders of Allowed POIs as set forth on Final Distribution Schedule; (ii) authorizing the abandonment and/or destruction of the Books and Records; (iii) terminating the Noticing Services; (iv) approving the discharge of the Plan Administrator and counsel; (v) closing the chapter 11 cases; (vi) approving the form and manner of notice of this Motion, including the proposed final distribution; and (vii) granting related relief.

## BASIS FOR RELIEF

### A.     The Final Distribution

23.     The Plan Administrator believes that the Plan, as implemented by Motion for an Interest Holder Bar Date [D.I. 657], (ii) the Objections to the Deficient POIs and (iii) the relief requested by this Motion, grants the Plan Administrator the authority to make the Final

---

[3] Attached hereto as **Exhibit B** is a descriptive list of Books and Records identified for destruction and/or abandonment.

Distribution to holders of Allowed POIs.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Further, section 1142(b) of the Bankruptcy Code provides, in relevant part, that "[t]he court may direct the debtor and any other necessary party to execute . . . any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). Bankruptcy Rule 3021 states, in relevant part, "[a]fter a plan is confirmed, distribution shall be made to … interest holders whose interests have not been disallowed[.]" Fed. R. Bankr. P. 3021. Finally, the Plan and Confirmation Order provide the Court with post-confirmation jurisdiction to grant the relief requested herein. *See* Plan, Art. XV ("Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains as much jurisdiction over the Chapter 11 Case after the Effective Date as legally permissible, including jurisdiction to D. Ensure that Distributions required under the Plan are accomplished in accordance with the Plan"); *see also* Confirmation Order ¶ 18 ("This Court hereby retains jurisdiction of the Chapter 11 Cases and all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Combined Disclosure Statement and Plan (i) as provided for in Article XV of the Combined Disclosure Statement and Plan, (ii) as provided for in this Confirmation Order, and (iii) for the purposes set forth in Bankruptcy Code Sections 1127 and 1142.").

24.    The Plan Administrator, cooperatively and through the objection process, has reconciled all filed POIs and is in a position to make the Final Distribution, as set forth on the Final Distribution Schedule, to holders of Allowed POIs. The Plan Administrator, therefore, seeks entry of the Proposed Order approving the Final Distribution Schedule. The Plan

4910-7975-6894, v. 3

Administrator submits that the Final Distribution is consistent with the terms of the Plan and that entry of the Proposed Order is in the best interests of remaining shareholders holding Allowed POIs.

### B.      Abandonment or Destruction of Remaining Books and Records

25.      Section 554 of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Section 105 of the Bankruptcy Code authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  *Id*. at § 105(a).

26.      "In carrying out his statutory duty to maximize the bankrupt's estate, the Trustee may abandon his claim to any asset . . . he deems less valuable than the cost of asserting the claim or administering the property."  *Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654 (3rd Cir. 1974).  Courts have authorized trustees to destroy or abandon books and records in other cases where such books and records were burdensome or of inconsequential value to the estate. *See, e.g., In re Adelphia Hospital Corp.*, 579 F.2d 726 (2d Cir. 1978) (permitting the trustee of a debtor hospital to dispose of patients' medical records, even though applicable regulations required hospitals to maintain, store, and service those records for at least six years); *In re Cult Awareness Network, Inc.*, 205 B.R. 575 (N.D. Ill. 1997) (permitting trustee to abandon files containing information on various religious entities); *In re PubliCARD, Inc.*, Case No. 07-11517 (RDD) (Bankr. S.D.N.Y. Jan. 30, 2008) (order authorizing reorganized debtor to destroy certain personnel, accounting, and payroll records, among other items); *In re Xpedior Inc.*, 354 B.R. 210, 221 (Bankr. N.D. Ill. 2006) (authorizing plan trustee to destroy all books and records because, among other things, "all the Debtors' assets [were] liquidated … [and] there exist[ed] no business purpose for retaining the Debtors' books and records").

27.     The Post-Effective Date estates have been fully administered, and all Retained Causes of Action have been fully resolved. The Plan Administrator has determined that the Debtors' Books and Records—boxes of files—are of no value to and do not benefit the estates. To the contrary, to continue to pay storage fees for these records is a needless burden. Accordingly, the Plan Administrator seeks authority to abandon and/or destroy the Books and Records as part of closing out these Estates.

28.     The Plan Administrator respectfully submits that the requested relief in the Motion is necessary and appropriate under the circumstances of this case.   The Plan Administrator respectfully requests that this Court enter an Order authorizing the abandonment and destruction of the Books and Records.

### C.     Termination of Noticing Services

29.     In addition to the foregoing, the Plan Administrator requests entry of an order terminating Stretto as the noticing agent. Upon termination, and except as otherwise provided herein, Stretto shall have no further obligations to the Court, the Debtors, the Plan Administrator, or any other party in interest as noticing agent. Stretto may, but is not obligated to, continue to provide any other services that may be requested by the Plan Administrator.

30.     In accordance with Local Rule 2002-1(f)(ii), within twenty-eight (28) days of entry of the Proposed Order, Stretto will (i) forward to the Clerk of the Court an electronic version of all imaged POIs; (ii) upload the POI mailing list into CM/ECF; and (iii) docket the final POI register containing the POIs filed in the Chapter 11 Cases.

31.     If Stretto receives any mail regarding the Chapter 11 Cases after entry of an order granting this Motion, Stretto will forward such mail to the Plan Administrator as soon as is practicable.

4910-7975-6894, v. 3

**D.** **Discharge of the Plan Administrator and Counsel**

32.     This Motion also seeks entry of an order approving the discharge of the Plan Administrator and his counsel from all further duties and obligations under the Plan. As discussed above, the Plan Administrator has fully monetized the Retained Causes of Action, completed the claims reconciliation process, paid all creditors in full with interest, resolved all POIs and completed the POI reconciliation process. As a result, the Plan Administrator is in a position to make the Final Distribution in accordance with the Final Distribution Schedule and seeks authority and approval to do so.

33.     The remaining costs and expenses of the Plan Administrator, his counsel and the Noticing Agent have been estimated and will be withheld from the Final Distribution. To the extent any such fees and costs are higher than anticipated, they are waived. The Plan provides that the Plan Administrator shall be discharged after the administration of the Estates is complete. Plan at Art. IV. § R (Purpose of Plan). The Plan Administrator has completed his investigation, prosecution, and resolution of the Alleged Bad Actor Litigation. Thus, the discharge of the Plan Administrator and his counsel is appropriate.

**E.** **Entry of a Final Decree and Order Closing the Chapter 11 Cases.**

34.     Section 350(a) of the Bankruptcy Code provides: "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Bankruptcy Rule 3022 provides: "After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion, or on motion of a party in interest, shall enter a final decree closing the case." In addition, Local Rule 3022-1(a) provides:

> Upon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid. Such motion shall include a proposed final decree order that (i) orders the closing of the case and (ii) identifies

the case name and the case number of the case to be closed under
the order.

35.     The term "fully administered" is not defined in the Bankruptcy Code, the

Bankruptcy Rules, or the Local Rules. The Advisory Committee Note to Bankruptcy Rule 3022

(the "**Committee Note**"), however, sets forth the following non-exclusive factors to be

considered in determining whether a case has been fully administered:

> (1) whether the order confirming the plan has become final, (2)
> whether deposits required by the plan have been distributed, (3)
> whether the property proposed by the plan to be transferred has
> been transferred, (4) whether the debtor or the successor of the
> debtor under the plan has assumed the business or the management
> of the property dealt with by the plan, (5) whether payments under
> the plan have commenced, and (6) whether all motions, contested
> matters, and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022, Advisory Committee Note (1991).

36.     Courts in this district and others consider these factors as a guide in determining

whether a case has been fully administered.  *See In re SLI, Inc.*, No. 02-12608, 2005 WL 1668396,

at *2 (Bankr. D. Del. June 24, 2005); *see also In re JCP Props., Ltd.*, 540 B.R. 596, 605 (Bankr.

S.D. Tex. 2015) (internal quotations and citations omitted) (observing that factors (3)-(5)

correspond "to whether substantial consummation of the chapter 11 plan has been achieved); *In re*

*Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999).

"[A]ll of the factors in the Committee Note need not be present before the Court will enter a final

decree." *Walnut Assocs. v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994).

37.     As of the date of this Motion, the Chapter 11 Cases have been fully administered

under section 350 of the Bankruptcy Code, making it appropriate for the Court now to enter a

final decree and order closing the Chapter 11 Cases. In particular:

> a.     the Confirmation Order is final and non-appealable and the Plan is
> Effective;

4910-7975-6894, v. 3

b.      pursuant to the Plan, the post-Effective Date Debtors' estates have been fully administered and all Retained Causes of Action have been monetized;

c.      all distributions and payments required to be made pursuant to the Plan have been completed or will be completed imminently;

d.      all transactions contemplated by the Plan closed on or before the Effective Date;

e.      there are no pending motions, contested matters, or adversary proceedings related to the Chapter 11 Cases; and

f.      the Plan has been fully implemented through the liquidation of all of the post-Effective Date Debtors' assets and the distribution of proceeds in accordance with the Plan.[4]

38.      Pursuant to Local Rule 3022-1(c), a final report and accounting will be filed no later than fourteen (14) days prior to the hearing on this Motion.

## NOTICE

39.      Notice of this Motion has been provided to (i)the Office of the United States Trustee for the District of Delaware (ii) Department of the Treasury Internal Revenue Service PO Box 9941, Stop 6552 Ogden, UT 84409-0941, and (iii) each holder of an Allowed Proof of Interest eligible for distribution listed on the Final Distribution Schedule. In light of the nature of the relief requested herein, the Plan Administrator submits that no other or further notice is necessary.

---

[4] The Plan Administrator has set aside a reserve in connection with certain remaining administerial tasks including, among others: (i) prepare and file the final quarterly post-confirmation report and payment of U.S.T fees, (ii) prepare financial statements for the year of 2025 and work with the Debtors' accounting firm to prepare and file 2025 federal and state tax returns and make applicable payments to taxing authorities; (iii) distribute 1099s to holders of allowed Interests and certain vendors; (iv) transfer applicable books and records to BioNTech and coordinated with Iron Mountain to destroy any remaining records; (v) close the Debtors' bank accounts; (vi) terminate the Debtors' miscellaneous accounts and software licenses with various vendors, such as American Express, Microsoft, Adobe, Box, Network, Oracle-Netsuit, CSC, etc. To the extent the professional fees incurred by The Rosner Law Group LLC ("RLG") in connection with the foregoing activities exceeds the amount set aside in the reserve, any excess amounts are hereby waived by RLG.

4910-7975-6894, v. 3

## **CONCLUSION**

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the Proposed Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: November 17, 2025
        Wilmington, Delaware

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Zhao Liu*
Frederick B. Rosner (DE 3995)
Zhao (Ruby) Liu (DE 6436)
Cora (Chan) Dong (DE 7393)
824 Market Street, Suite 810
Wilmington, DE 19801
(302) 777-1111
rosner@teamrosner.com
liu@teamrosner.com
dong@teamrosner.com

*Counsel for the Plan Administrator*

4910-7975-6894, v. 3